BALTIMORE BUILDING & LOAN ASS'N et al. v. ALDERSON et al.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1900.)

No. 313.

1. APPEAL AND ERROR—MANDATE ON REVERSAL—JURISDICTION OF TRIAL COURT.
Where a mandate from the circuit court of appeals to the circuit court directs the latter to vacate an order ratifying a sale by a receiver on the ground that the court was without jurisdiction in the suit, and directs that the purchase price in the registry of the court be repaid to the purchaser, the circuit court has jurisdiction to entertain a petition of intervention by the sureties of the receiver, who paid such money into the court registry upon the embezzlement by the receiver of the original payment, and to direct instead that the money be returned to them on the ground that, since the appointment of the receiver was void, they were not liable on the bond.

2. RECEIVERS—APPOINTMENT—LIABILITY ON BOND.
Where the appointment of a receiver was regular, and in a matter over which the court had taken jurisdiction, and the receiver takes possession of the property, and embezzles the proceeds, the sureties on his bond are liable, though the bill under which he was appointed was afterwards dismissed for want of jurisdiction.

Appeal from the Circuit Court of the United States for the District of West Virginia.

J. G. McCluer and Fielder C. Slingluff (C. D. Forrer, on the brief), for appellants.

W. P. Hubbard, for appellees.

Before SIMONTON, Circuit Judge, and PAUL and BRAWLEY, District Judges.

SIMONTON, Circuit Judge. This case comes up on appeal from a decree of the circuit court of the United States for the district of West Virginia. One Joseph C. Alderson, a citizen of the state of Maryland, filed his bill of complaint in the circuit court of the United States for the district of West Virginia against the Loch Lynn Heights Hotel Company, a corporation of the state of West Virginia, and certain other parties, citizens and residents of the state of Maryland. Upon the filing of that bill the property of the

defendant corporation was put into the hands of a receiver, who took charge thereof. In the progress of the cause, proceedings were had therein whereby, among other things, realty of the corporation was sold by Sommerville, receiver, under the order of the court. Fielder C. Slingluff became the purchaser of certain parcels of the real estate of the insolvent corporation. Sommerville, the receiver, upon his appointment as such, was required to give bond, with surety. He did this, and gave as his surety D. H. Taylor. The sale to Slingluff was set aside, another sale was ordered, and Sommerville, receiver, was ordered to give an additional bond of $8,000. This he did, with N. E. Whitaker as surety. Another sale having taken place, Slingluff again became the purchaser in the sum of $16,610, and paid on his purchase $5,536.66. This money was paid to the receiver. The receiver made his report of sales, and he was thereupon ordered to pay this sum of $5,536.66, and a further sum in his hands from other sales,—$116.52,—into the registry of the court. The receiver did not do this, but embezzled the money. Thereupon his sureties paid the money for him, and it is in the registry of the court. In the final decree of the circuit court this fact is distinctly stated; and the money is said to be in the hands of the clerk of the court to the credit of the cause. Exceptions having been taken to this final decree, and an appeal having been allowed to this court, the exceptions were sustained, and the decree of the circuit court was reversed. 90 Fed. 142. The mandate of this court, sent down after the hearing, recites in full the circuit decree, including the statement that the cash portion of the purchase money paid by Slingluff was in the registry of the court, to wit, $5,536.66. The mandate then goes on:

"And whereas, in the term of May, in the year of our Lord one thousand eight hundred and ninety-eight, the said cause came on to be heard before the United States circuit court of appeals for the Fourth circuit, on the transcript of the record, and was argued by counsel, on consideration whereof it is now ordered, adjudged, and decreed by this court that the decrees of the said circuit court appealed from in this cause be, and the same are hereby, reversed, and this cause is remanded to the circuit court of the United States for the district of West Virginia at Parkersburg, with instructions to vacate the order ratifying the sales made by the receiver, and the order distributing the purchase money, and that it direct that the payments made by the purchasers be returned to them, and that the decrees for sale be set aside, and the bill dismissed; the costs to be paid by the appellee. It is further ordered that the mandate of this court issue after the expiration of twenty days from the date hereof."

When the case was called in the circuit court, the mandate having been entered, N. E. Whitaker and D. H. Taylor, sureties of Sommerville, receiver, intervened by petition, praying that the money paid by them into the registry be returned to them. The gravamen of the petition is that this court had reversed altogether the decree of the circuit court below, holding that that court had no jurisdiction; that, therefore, all of its acts were void, the appointment of the receiver was void, and his bond a nullity; that there was no obligation on the part of the sureties to pay this money, and its payment into the hands of the clerk did not deprive them of their title thereto. The circuit court granted the prayer of the petitioners in these words:

"It appearing to the court that of the money in the registry of the court to the credit of this cause the sum of $5,569.18 was not paid into the registry by the receiver in this cause, whose action in making the sale of the property, as well as receiving payment therefor, is held to be void, but was paid into such registry, $4,455.34 thereof by Nelson E. Whitaker and $1,113.84 by D. H. Taylor, under a void order of the court, such payment having been made as is set forth in the respective petitions aforesaid of said Whitaker and Taylor, and that it is but just that the money paid by each of them should be returned to him, it is therefore ordered, adjudged, and decreed that of the money now in the registry of this court to the credit of this cause $4,455.34 be repaid and returned by the registrar to Nelson E. Whitaker, and $1,113.84 be repaid and returned to said D. H. Taylor by the registrar."

To this decree a petition for leave to appeal was presented and allowed upon the exceptions, and the cause is here for adjudication. The grounds of exception are that the circuit court erred in not obeying the mandate of this court in ordering the return of the money paid by Slingluff, then in the registry of this court, and that the circuit court erred in that it ordered the return of this money to the sureties.

As to the mandate. The mandate of this court recited in full the decree of the court below. That decree recited, among other things: "That the said Slingluff paid to the said receiver the sum of $5,536.66 in cash, and delivered to said receiver his two notes for $5,536.66, dated 22d June, 1897, and payable, respectively, in six and twelve months, with interest, and the said money, with the sum of $116.52, which remained in said receiver's hands from other sources, having been paid into the registry of this court, and being now in the hands of L. B. Dellicker, clerk of this court." The mandate, as has been stated, after reversing the decrees of the court below, remands the case, with instructions to vacate the order ratifying the sales made by the receiver and the order distributing the purchase money, and "that it direct that the payments made by the purchasers be returned to them, and that the decrees for sale be set aside, and the bill dismissed." "It is well settled," says the supreme court in Re Blake, 20 Sup. Ct. 42, Adv. S. U. S. 42, 44 L. Ed. —— (Nov. 13, 1899), "that when the mandate leaves nothing to the judgment of the court below, and that court mistakes or misconstrues the decree or judgment of this court, and does not give full effect to the mandate, its action may be controlled either upon a new appeal or writ of error, if involving a sufficient amount, or by a mandamus to execute the mandate of this court,"—and cases cited.

In the case In re Sanford Fork & Tool Co., 160 U. S. 255, 16 Sup. Ct. 293, 40 L. Ed. 416, the court says:

"When a case has been once decided by this court on appeal, and remanded to the circuit court, whatever was before this court and disposed of by the decree is considered as finally settled. The circuit court is bound by the decree as the law of the case, and must carry it into execution by its mandate. That court cannot vary it, or examine it for any other purpose than execution, or give any other or further relief, or review it, even for apparent error upon any matter decided on appeal, or intermeddle with it further than to settle so much as has been remanded."

See, also, In re Washington & G. R. Co., 140 U. S. 91, 11 Sup. Ct. 673, 35 L. Ed. 339.

Such is the general rule. But it must be observed that the question which came before the circuit court had never been presented to this court, and, in the nature of things, could not have been presented to it at the former hearing.

The petitioners below affirm that the money in the hands of the clerk, in the registry of the court, referred to in the decree below, was not put there by the receiver as part of the proceeds of sales; that it was, in fact, paid in by them under the supposition that they were sureties for the said receiver; that, inasmuch as all the orders of the circuit court have been reversed, including that appointing the receiver, the bond given by them as surety for him, supposing him to be a receiver, is null and void. Under these circumstances they ask restitution of this money. Notwithstanding the strong language used by the supreme court in the cases cited, it would seem that under some circumstances a discretion exists in the circuit court receiving the mandate. "This court," says Mr. Justice Wood, sitting on circuit, "is not, under all circumstances, bound to render a servile obedience to the mandate of the supreme court. It is bound to exercise a judicial discretion in the interpretation and execution of the mandate." The Sabine, 50 Fed. 217. In Story v. Livingston, 13 Pet. 373, 10 L. Ed. 200, the supreme court says: "The mandate is to be interpreted according to the subject-matter to which it has been applied, and not in a manner to do injustice." In West v. Brashear, 14 Pet. 53, 10 L. Ed. 350, the supreme court held that, when the language of the mandate was precise and unambiguous, the duty of the circuit court was to carry into execution, and not to look elsewhere for authority to change its meaning. But, examining the case, the court approved an examination made by the circuit court into the meaning of the mandate, and putting a construction upon it. This construction was coincident with that of the supreme court. In Ex parte Morris, 9 Wall. 605, 19 L. Ed. 799, the supreme court had reversed a decree rendered against Morris and another, and by its mandate directed the marshal to make restitution to them of whatever they had been compelled to pay under the reversed decree. Some of the money had been distributed. The remainder had been deposited by the marshal, under order of court, in a national bank, which had failed pendente lite. These facts were held to have exonerated the marshal from obeying the mandate, and this was sustained by the supreme court. In 139 U. S. 216, 11 Sup. Ct. 523, 35 L. Ed. 151, is a case (Fuel Co. v. Brock), which resembles this case, and, in our opinion, controls this branch of it. In that case the bill had been dismissed for want of jurisdiction, and the mandate went down accordingly. The court below, after the receipt of the mandate, entered an order that certain moneys which had been paid on account of the reversed judgment be returned to the parties who had paid them believing it to be valid. From this order an appeal was taken to the supreme court. Mr. Justice Field, speaking for the court, says: "The alleged error of the court below is that it had no jurisdiction to render judgment for restitution of the money collected on the reversed judgment; * * * that that court had no authority to act fur-

ther in the matter than as directed in the mandate." He says that position is supposed to be supported by decisions of the supreme court that, when a case is dismissed for want of jurisdiction in the circuit court to entertain the action or to render the judgment entered, the power of that court to award costs is gone. "But here," he says, "the jurisdiction exercised by the court below was only to correct, by its own order, that which, according to the judgment of its appellate court, it had no authority to do in the first instance. The power is inherent in every court, whilst the subject of controversy is in its custody and the parties are before it, to undo what it had no authority to do originally, and in which it, therefore, acted erroneously, and to restore, as far as possible, the parties to their former position. Jurisdiction to correct what had been wrongfully done must remain with the court so long as the parties and the case are properly before it, either in the first instance or when remanded to it by an appellate tribunal." Further, the court says: "The restitution is not made to depend at all upon the question whether or not the court rendering the judgment reversed acted within or without its jurisdiction." Brewer and Brown, JJ., had supposed the law to be different. "But the result is so manifestly equitable, they were glad to know that they were mistaken and that the law is as it is now adjudged to be."

If, therefore, the petitioners are right in their contention that they had paid this money into court under a void order and an invalid bond, the circuit court had jurisdiction, notwithstanding the dismissal of the bill for want of jurisdiction, to correct by its own order that which, according to the judgment of its appellate court, it had no authority to do in the first instance. The circuit court was not in error in entertaining the petitions.

This brings us to the merits of the case. Was J. B. Sommerville receiver in the cause? Was the order requiring him to give bond, with sureties, a valid order? And were the bonds given by him, with these petitioners as sureties, valid bonds? Were the appointment of Sommerville, receiver, wholly irregular,—even contrary to law and its policy,—this would not relieve him, or those persons who became surety for him, from the legal and moral obligation to account for the money placed in his hands by reason of and in faith of his bond, with surety. U. S. v. Maurice, Fed. Cas. No. 15,-747. In that case, Chief Justice Marshall, sitting on circuit, discusses this same question, and lays down the law as has been stated. He concludes his argument in these words: "If, then, this appointment be contrary to the policy of the law, the repayment of the money under it is not, and a suit may, I think, be sustained on the bond given for that purpose." Referring to the cases cited against his position, of Collins v. Blanton, 2 Wils. 341, Paxton v. Popham, 9 East, 408, Pole v. Haerobin, Id. 416, he shows that these bonds were given for the payment of money for an unlawful purpose. But these cases differed from the one before him and from the case at bar. Neither in that case nor in this was the bond given to induce the illegal appointment, or for any purpose in itself unlawful, but for the sole custody of money placed in the hands of the

principal. But the appointment of a receiver in the case at bar was neither irregular nor unlawful. It was the wise exercise of its discretion by the court in a matter within its jurisdiction, and in the due course of a proceeding in equity. A receiver is an indifferent person, appointed by a court as a quasi officer or representative of the court, to take charge of, and sometimes to manage, the property in controversy, under the direction and control of the court, during the continuance of or in pursuance of the litigation. The appointment of a receiver determines no right. He is a part of the machinery of the court by which equity protects and secures the rights of parties,—all parties in interest. His custody is that of the law. Booth v. Clark, 17 How. 322, 15 L. Ed. 164. When, therefore, the court concluded to assume jurisdiction, and to take the property into its custody, it became, not the right, but the duty, of the court to place it in the hands of a receiver, its own officer, whose possession was its possession, and who should hold it, not for this party or that, but, as the representative of the law, for the protection of those whose rights should appear. This being the clear right and duty of the court, it had also the right, as well as the duty, to secure to the parties the protection of the property in the hands of this officer of the law, by requiring and exacting from him a bond with sureties. This bond protected the property and its owners; and when the receiver was called upon to account for it, whether by the decree of the court designating the proper owners, or because the court released the custody of it, the receiver was bound to account for it. Failing in this, his sureties must respond. All this naturally arises from the relation of the receiver to the court. He is its agent,—merely its ministerial officer. His possession is custodia legis. Whether the court had the right in that particular case to appoint him, he could not question it. He and his sureties are estopped from denying the jurisdiction of the court. Indeed, one of the reasons for his appointment was the protection of the property in case it should appear that the court was without jurisdiction.

The learned counsel for the appellees with great earnestness contends that these bonds are void, because, the court being without jurisdiction, there could be no receiver de jure, and so there can be no receiver de facto, if there were no receiver de jure. They rely on Norton v. Shelby Co., 118 U. S. 441, 442, 6 Sup. Ct. 1121, 30 L. Ed. 178. That case holds that, where there is no office in existence which the law will recognize, there can be no office de facto. But the office of receiver (if we may call it an office) has a recognized existence. It is the mode in which a court of equity protects property which it has taken into its custody. The inherent right of the court of equity is to name such a person, who is called its receiver; and, as has been seen, the appointment of a receiver determines no right. He simply holds for the court. In fact, the receivership is more in the nature of a condition. "His position is somewhat analogous to that of a corporation sole." So long as property remains in the custody of the court, and is administered through the agency of a receiver, such receivership is continuous

and uninterrupted until the court relinquishes its hold on the property, though its personnel may be subject to repeated changes. Mc-Nulta v. Lochridge, 141 U. S. 332, 12, Sup. Ct. 13, 35 L. Ed. 799. This being the case when Sommerville was appointed receiver, he was appointed to a place which had a recognized existence in the law; and when he was required to give, and did give, surety, this was in the orderly course of proceeding. Even were this receiver in de facto, "the acts of an officer de facto, although his title be bad, are valid so far as they concern the public, or the rights of third persons who have an interest in the things done." County of Ralls v. Douglass, 105 U. S. 730, 26 L. Ed. 958. But we are of the opinion that he was not a de facto receiver. When he was appointed, when he gave these bonds, and when he made his default, the circuit court of the United States had taken and held this property. At that time its action was the law of the case. Its appointment of the receiver was not only a valid, but a necessary, act. Sommerville assumed its duties, and took possession of the property and moneys in no other character than that of a receiver regularly appointed, and he gave his bonds under an order of the court, to that extent certainly valid. When he defaulted, and his sureties, the petitioners, paid into the court the money for which he had made default, they were fulfilling their legal as well as their moral obligation, and they are not entitled to its restitution. The decree of the circuit court is reversed. The cause is remanded to that court, with instructions to dismiss the petitions of N. E. Whitaker and D. H. Taylor, and to direct the payment to Fielder C. Slingluff, from the funds in the registry of the court, of the sum paid by him on account of the supposed purchase of the realty bid in by him.