# CHARLESTON.

Beardsley Co. v. Ashdown & Co. *et al.*

Submitted June 10, 1912.   Decided November 4, 1913.

1. Receivers—*Termination of Suit—Jurisdiction Over Property.*
   Property or funds in the hands of a receiver is in *custodia legis;* and if the suit should terminate for want of 'jurisdiction, or any other cause, .the court still has jurisdiction for the purpose of making restoration to the owner of such property or funds, or to the person who has acquired a legal right thereto.   (p. 134-5).

2. Same—*Sale of Property—Accounting.*
   If the receiver has, in good faith, sold the property under direction of the court, he should not be required to account for more than its value at the time it was wrongfully taken.   (p. 138).

3. Same—*Sale of Property—Accounting—Evidence of Value.*
   After due advertisement for competitive bids for a stock of goods offered for sale in bulk, the highest bid received should be taken as evidence of their value rather than the value evidenced by an invoice thereof taken by the owner.   (p. 138).

Appeal from Circuit Court, Ohio County.

Bill by the Beardsley Company against V. E. Ashdown & Co. and others. Decree for complainant, and Louis Paull appeals.

*Reversed and Remanded.*

*George A. Blackford* and *Noyes & Ritz,* for appellant.

*J. B. Handlan,* for appellee.

Williams, Judge:

The Beardsley Company, a corporation chartered for the purpose of "decorating, painting, papering, buying and selling wall paper, paints and decorator's supplies and for the purpose of renovating, over-hauling, repairing and renewing buildings generally," having its principal place of business in the City of Wheeling, becoming largely indebted and being threatened with suits, brought a suit in equity against its numerous creditors, praying that a receiver be appointed to take charge of its assets, and that he be given power to "com-

73 W. Va.

plete its contracts and dispose of its assets by the making of new contracts, or in such manner as will bring the greatest possible price for the same." It also prayed that its credit- ors be enjoined from prosecuting suits against it, or in any wise interfering with such receiver, and that its assets be applied to the payment of its debts in the order of their prior- ities, and that any surplus, after the payment of debts, be paid to its stockholders. Thereupon, in December, 1908, Louis Paull was appointed receiver, gave bond and took charge of all of plaintiff's property, and conducted the business for about a year. He made his first report to the court on the 5th of February, 1910, saying, "that after conducting the busi- ness for one year in the most economical way possible," he found that it could not be run with profit to the creditors, and asked that he be permitted to make immediate sale of the property, and wind up plaintiff's affairs under direction of the court. The court authorized him to make sale, and, at the same time, referred the cause to a commissioner to ascertain and report the debts, and to settle and audit the receiver's accounts. The receiver sold all the property, then on hands, in bulk, as he was authorized to do, after having advertised for competitive bids, to John T. Kelly of Cleveland, Ohio, at the price of $3,880.86, he being the highest of four competi- tive bidders, one of whom resided in the city of Wheeling. The decree appointing the receiver directed him to take an inventory of the property and assets of every kind, which had been turned over to him, and to report to court the amount thereof; and also to report what contracts the plaintiff had made, the condition thereof and whether it would be profit- able for the receiver to complete them "under the directions and orders of the court," and whether it would be feasible and profitable for him to undertake to obtain other contracts and conduct the business of plaintiff. He did not take an inventory, but relied upon the one taken by plaintiff and exhibited with its bill, which showed the value of the stock of goods then on hand to be something over $13,000.00, be- sides $71.27 in cash. In his settlement of the receiver's account, the commissioner charged him with that valuation, because the receiver had incorporated it in his own report. The receiver took a number of exceptions to the report, all

of which were overruled except one which related to the commissioner's finding that the receiver was personally liable for something over $2,000 of debts created by his own purchase of goods, as such receiver, and used in conducting plaintiff's business during the receivership. This exception was sustained, and the question of his liability for those debts left undetermined. But the court held him liable for the value of the goods as evidenced by the inventory, instead of their value as ascertained by the subsequent sale made under order of court; and he has appealed, assigning as error, that the court was without jurisdiction to grant relief in the cause, and, therefore, could not decree against him; and that the decree is also erroneous in amount.

The bill is admittedly without equity. It presented no cause of action, and was finally dismissed for want of jurisdiction. But before it was dismissed, plaintiff had been adjudged a bankrupt by the District Court for the Northern District of West Virginia, and the trustee in bankruptcy had filed his petition in this cause praying that the funds in the hands of the receiver be turned over to him. The court accordingly decreed that the receiver pay to A. L. Sawtelle, trustee in bankruptcy, $11,509.33, less the sum of $249, costs of suit, which he was directed to turn over to the clerk of the court. This sum is arrived at according to the value of the goods that went into the receiver's hands, taken by the commissioner from the inventory filed with plaintiff's bill, after allowing the receiver certain credits.

Notwithstanding the court was without jurisdiction to appoint a receiver, or to do anything else in the case, it still had the power to correct the wrong which it had done, by restoring, as far as possible, the property to the party from whom it had been wrongfully taken. But the property had been sold, and it was therefore impossible to restore it in kind; all the court could then do was to turn over the proceeds. The bankruptcy court had, in the meantime, acquired jurisdiction to administer plaintiff's assets, and the trustee in bankruptcy was therefore the proper person to receive the proceeds. A receiver is not a trustee for the litigants. He is appointed as the court's officer, to serve its convenience and to preserve rights pending their determination. Property in his hands,

as such officer, is said to be in *custodia legis;* and, if the court has taken property from the owner, without jurisdiction, it ought, in justice, to restore it. The receiver has no right to complain of this exercise of power by the court, for he is not thereby divested of any right. As between him and the owner of the property, the receiver is estopped to deny the jurisdiction of the court to make restoration. *Baltimore B. & L. Ass'n.* v. *Alderson,* 99 Fed. 489. We are not called upon to say, and therefore do not determine, to what extent, if any, a receiver appointed by a void order, and the sureties on his bond, are liable to third persons for his conduct. All we do decide is, that he may be required by the court that appointed him to make restoration to the owner of property wrongfully taken from him, or of its proceeds, if it has been sold under order of court. It is one of the inherent powers of courts, charged with the administration of justice, to right their own wrongs whenever possible to do so. Such power is independent of whether the court had jurisdiction of the cause in which the wrong was committed. We find a number of cases in which this principle has been sanctioned and applied.

*Northwestern Fuel Co.* v. *Brock,* 139 U. S. 216, 35 L. Ed. 151, was a case where the plaintiff had recovered a judgment in the United States Circuit Court for the Northern District of Iowa, and, on writ of error to the Supreme Court of the United States, the judgment was reversed for want of jurisdiction in the circuit court, The Supreme Court ordered that the plaintiffs in error have execution for their costs; and the cause was remanded for further proceedings. On the filing of the mandate in the circuit court, defendants moved for judgment against plaintiff for their costs, and also for certain sums of money which had been collected, in the meantime, on the void judgment. The court ascertained that $629.23 had been collected on the judgment, and gave judgment for that sum and the costs, which together aggregated $840.00, and plaintiff took a writ of error to the Supreme Court of the United States, alleging as error that the court, being without jurisdiction of the cause of action, was without jurisdiction to render judgment either for costs, or for the money which had been collected on the void judgment. But the action of the lower court was sustained. Justice Field who wrote the opinion, in which

all the Justices concurred, says: ''We are of opinion that the proceeding to enforce the restitution in the cases mentioned is under the control of the court, and that all needed inquiry can be had to guide its judgment in a summary proceeding, upon motion of the parties, the only requisite being that the opposite party shall be heard, so that in directing restitution no further wrong be committed. The restitution is not made to depend at all upon the question whether or not the court rendering judgment reversed acted within or without its jurisdiction.''

*Bank of Mississippi* v. *Duncan,* 52 Miss. 740, was a case involving the right of the court to make restoration of funds in the hands of its receiver, who had been appointed by a decree, void for want of jurisdiction. Point one of the syllabus is, in part, as follows: ''Where the court takes the fund from a defendant, pending litigation, and afterwards becomes satisfied it cannot grant relief, and dismisses the bill, it still has power to retain the bill for the purpose of repairing the wrong. Equity courts can compel receivers to pay a fund into court, or to account,'' etc.

In *Whiteside* v. *Prendergast,* 2 Barb. (N. Y.) 471, it was held: ''Where the protection of the rights of a defendant requires the continuance of the receiver, the court will not grant a discharge, although the suit is at an end. But it will require the defendant thus protected to file a bill forthwith, to settle his rights.''

*Baltimore B. & L. Ass'n.* v. *Alderson,* 99 Fed. 489, a case decided by the Circuit Court of Appeals on an appeal from the Circuit Court of the United States for the District of West Virginia, is also in point. The circuit court, acting without jurisdiction, had appointed a receiver, and ordered sale of certain property. The receiver gave bond, as required, and made sale, receiving a portion of the purchase money in cash. He embezzled it, and his surety responded by paying the money, for him, into the registry of the court. On appeal to the Circuit Court of Appeals (90 Fed. 142), it was held that the circuit court was without jurisdiction to entertain the suit, and that the entire proceedings were *coram non judice* and void. When the mandate came down to the circuit court, the surety, who had answered for the receiver's default, demanded

that the money which he had paid into the registry of the court be returned to him, on the alleged ground that, the order appointing the receiver was void and his bond created no obligation. But the court held that he was liable as surety, notwithstanding the want of jurisdiction to appoint the receiver, and decreed that the purchaser at the void sale, and not the surety, was entitled to the money. Judge Simonton, who delivered the opinion of the court, in discussing the office and duties of a receiver, says: ''He is its (the court's) agent,—merely its ministerial officer. His possession is *custodia legis.* Whether the court had the right in that particular case to appoint him, he could not question it. He and his sureties are estopped from denying the jurisdiction of the court. Indeed, one of the reasons for his appointment was the protection of the property in case it should appear that the court was without jurisdiction.''

In *Field* v. *Jones,* 11 Ga. 413, a receiver had been appointed to collect the rents, issues and profits of certain property; and afterwards the bill was dismissed on demurrer for want of jurisdiction. The court there held that, notwithstanding the receiver's functions *inter partes* had ceased, he was still amenable to the court, and the funds in his hands were subject to its order, and that it should be returned to the party from whom it was taken. Judge Nisbet, who wrote the opinion, at page 415, says: ''The decision on the demurrer, determining that the complainant in the bill had no equity, determined also, that the fund in question had been wrongfully placed in the custody of the receiver. This being so, it was the duty of the Chancellor to order it to be paid to *Fields* or his assignees, without conditions, unless withheld from so doing by the claim of other persons, rightfully and according to the forms of Chancery proceedings, brought to his cognizance.''

It was proper to require appellant to make settlement of his accounts, and to hold him liable for the proceeds derived from sale of the property, crediting him with any liens he may have paid, and with all legitimate and necessary expenses incurred in caring for the property and in making sale of it. He is also entitled to a fair remuneration for services performed in executing the court's orders, but not for services in conduct-

ing plaintiff's business for a year without any direction from the court so to do.

Neither the rights of plaintiff's creditors, nor of the creditors of the receiver, can be determined in this suit. Inasmuch as the receiver sold the property under the direction of the court, in good faith, and appears to have procured the best price obtainable, which is very much below the value, as shown by the inventory taken by plaintiff when it filed its bill, he should not be held to account for that valuation, in the absence of proof that the depreciation was caused by his misconduct or neglect of duty.

The proceedings in bankruptcy did not divest the state court of its jurisdiction to ascertain what was in its receiver's hands, and to direct him to turn it over to the person lawfully entitled thereto, who, as we have said, is the trustee in bankruptcy. The federal court itself has recognized such jurisdiction in the state court, by authorizing the trustee in bankruptcy to apply to it for the funds.

In view of the fact that the receiver carried on the business for a year without authority from the court, and, no doubt, consumed a portion of the stock of goods that came into his hands in completing contracts made by plaintiff, and in performing new ones made by himself, it may be difficult to determine accurately the amount of funds which are, or should be, in his hands. But the amount should be ascertained, as near as may be, according to the principles of equity and justice. In the absence of fraud, he should not be held responsible for what he did not, and could not, realize on a sale of the goods. The stock very probably consisted largely of remnants, and plaintiff, in order to make as fair a showing to its creditors as possible, may have valued them in the invoice at the original cost. But it is common knowledge, that the remnant of a stock of merchandise can not be sold in bulk at anything like its first cost. Moreover, the creditors were personally served with process, and made no effort to stop the receiver from conducting the business. They must have known that he was carrying on the business without direction from the court, and they made no effort to stop him, or to have him discharged. Many of them lived in the city of Wheeling; the bill apprised them of what the receiver was asked to do; and,

therefore, it may fairly be assumed that they acquiesced in both his appointment and in his conducting the business. While consent can never confer jurisdiction, so as to validate the proceedings, it would nevertheless seem inequitable for them now to complain; and, in view of the plaintiff's insolvency, no one else has a right to complain.

We reverse the decree of 27th Mar. 1911, and remand the cause for a reascertainment of the funds in the hands of Louis Paull receiver, according to the principles herein stated and further according to equity and justice, with costs of this appeal to be paid out of the fund in the receiver's hands.

*Reversed and Remanded.*