# CHARLESTON.

STATE OF WEST VIRGINIA *Ex Rel* SHULL, RECEIVER, v. UNITED STATES FIDELITY & GUARANTY CO.

Submitted October 23, 1917.    Decided October 30, 1917.

1. COURT COMMISSIONERS—*Suit Against—Consent of Court.*
   Ordinarily an officer of a court cannot be sued without the consent of the court appointing him, but where a suit is brought against such officer in the court of his appointment and is regularly proceeded with in such court to final judgment or decree without interference by such court, it will be taken to have consented thereto. (p. 189).

2. RECEIVERS—*Receiver of Federal Court—Suit in State Court.*
   A receiver appointed by a federal district court, when properly authorized thereto by the court appointing him, may maintain a suit in the courts of this state to vindicate a property right of the estate committed to his care. (p. 188).

3. COURT COMMISSIONERS—*Payment of Funds—Duties—Liability of Surety for Breach.*
   It is a part of the duty of a special commissioner of a circuit court to pay out funds coming into his hands as directed by the court appointing him, and his failure to do so is a breach of the condition that he will faithfully perform his duties contained in his official bond for which the surety therein is liable. (p. 189).

4. SAME—*Action Against Surety on Bond—Estoppel to Deny Official Character of Principal.*
   The surety in the official bond of a special commissioner appointed by a circuit court is estopped to deny the official character of his principal. (p. 189).

5. SAME—*Action Against Surety on Bond—Jurisdiction.*
   Neither can such surety question the jurisdiction of the court to appoint such special commissioner. (p. 189).

6. Judicial Sales—*Sale Without Jurisdiction—Return of Purchase Money.*

Where a court of equity makes a sale of real estate in a cause in which it is without jurisdiction, it will, upon ascertaining that such sale is void, return to the purchaser so much of the purchase money as remains in the possession of its officer, and as far as possible restore the status quo existing at the time of the institution of such suit. (p. 191).

7. Court Commissioners—*Suit on Official Bond—Failure to Return Money.*

If, in such case, the special commissioner who collected such purchase money fail to return the same to the purchaser upon being required so to do, such purchaser may recover the same in a suit upon the official bond of such special commissioner. (p. 191).

8. Same—*Payment of Money—Liability for Breach of Duty—Interest.*

Where an officer of a court fails to pay out money in his hands when ordered to do so by the court appointing him, he is chargeable with interest thereon from the time he is directed to make such disbursment until the same is actually paid.

Error to Circuit Court, Randolph County.

Action at law by the State of West Virginia at the relation of L. E. Shull, receiver, etc., against Jared L. Wamsley and the United States Fidelity & Guaranty Company. Judgment for plaintiff, and the United States Fidelity & Guaranty Company appeals.        *Judgment affirmed.*

*Claude W. Maxwell* and *J. Hop Woods,* for appellant.

*E. A. Bowers, John F. Brown* and *Wm. A. Arnold,* for appellee.

Ritz, Judge:

At a sale made by Jared L. Wamsley, Special Commissioner of the circuit court of Randolph county, Hench, Dromgold & Shull purchased the timber upon a tract of land for the consideration of twenty-four hundred dollars, paying therefor the sum of eight hundred dollars in cash, and executing two bonds for eight hundred dollars each for the deferred installments of purchase money. This sale was duly confirmed, and when the first of said purchase money bonds became due said special commissioner was directed to collect the same with its interest, but was required to give a bond conditioned for the faithful performance of his duties as such special commissioner before proceeding to collect said bond.

He executed the bond sued on in this case with the United States Fidelity & Guaranty Company as surety, and thereupon collected the sum of $884.00, the amount of the first deferred purchase money bond with its interest. In that case a decree had been entered fixing the liens and directing said special commissioner to pay the same in their order. An appeal was taken from the decrees of the circuit court of Randolph county to this court, and upon said appeal it was held that the circuit court was without jurisdiction to make sale of the timber, and the cause was reversed with direction that the status quo be restored as far as possible. *Conrad* v. *Crouch,* 68 W. Va. 378. In the meantime Hench, Dromgold & Shull had become insolvent, and in a suit brought for the purpose of winding up the affairs of that concern in the Federal District Court for the Northern District of West Virginia the plaintiff in this suit was appointed a special receiver with full power to collect all of the assets belonging to said concern. When it was determined that the decree of the circuit court was void for want of jurisdiction, and that the parties should be restored to their former status, as far as possible, the plaintiff in this suit, as receiver for Hench, Dromgold & Shull, brought a suit in equity in the circuit court of Randolph county for the purpose of restoring the status existing prior to the sale, by having returned to him the money paid by Hench, Dromgold & Shull as the price of said timber. All the parties to whom Wamsley as special commissioner was directed to pay out these funds were made defendants to this bill, and discovery was sought therein from Wamsley as to what disposition he had made of the funds paid to him, as well as from the other defendants, as to what part of said funds had been paid to them, the purpose being to have the plaintiff subrogated to the rights of the creditors whose debts had been paid against their debtors. Wamsley demurred to the bill, but declined to answer the same, and declined to discover what disposition he had made of the funds coming into his hands. The commissioner, however, to whom the cause was referred, summoned before him all of the people to whom Wamsley was directed to make payment, and in this way ascertained that in so far as this last $884.00 was concerned Wamsley had

paid out of it the sum of $132.08, leaving in his hands the sum of $751.92 principal. In this case we are not concerned with the disposition made of the $800.00 cash payment, inasmuch as the bond given by the defendant here did not cover liability for that payment. Upon the commissioner's report a decree was entered requiring Wamsley to repay said sum to the plaintiff with its interest, and upon his failure to comply with this decree this suit was instituted against him and his surety in his official bond for the purpose of recovering thereon the amount so remaining in his hands undisbursed, with its proper interest. Soon thereafter Wamsley died, and the suit was abated as to him and proceeded with against the surety as sole defendant. There was a demurrer to the declaration which, being overruled, the defendant pleaded conditions performed, and also the Statute of Limitations of five years, which plea of the Statute of Limitations being rejected, it then pleaded the Statute of Limitations of ten years. The case was tried before the court in lieu of a jury. On this trial there was introduced the record in the chancery cause above referred to of *Shull, Receiver,* v. *Wamsley, et als.* There was also introduced the voucher or check given by Hench, Dromgold & Shull to Wamsley in payment of the $884.00 showing on its face that it was to pay on the timber purchase. There was also introduced said purchase money bond marked on its face, "paid," and plaintiff testified that no part of said $884.00 had ever been repaid to him by either Wamsley or the defendant. The court below found for the plaintiff the balance shown by the report of the commissioner in the case of *Shull, Receiver,* v. *Wamsley, et als,* not to have been paid out by said Wamsley, with interest thereon from the date of the decree entered in this court holding the sale void for want of jurisdiction, and directing that the status quo be restored.

The only ground of demurrer insisted upon is that the plaintiff does not aver that he had authority from the District Court to bring this action, and that the allegation in the declaration is not sufficient to show that he was duly appointed as such receiver by said district court. The plain-

tiff by leave of the court upon the filing of the demurrer, amended his declaration and charged that he was duly appointed and qualified as special receiver of said Hench, Dromgold & Shull by said district court, giving the date of the order appointing him, and averred that he duly qualified as such special receiver by giving the bond required, and further averred that by the said order of appointment he was duly authorized and empowered to prosecute and defend any action necessary for the protection of the estate of said Hench, Dromgold & Shull in any court having jurisdiction. This is not mere matter of recital, but is a direct and positive allegation of his appointment and qualification and of the authority conferred upon him. It fully meets the requirements laid down by this court in the case of *Austin* v. *Calloway*, 73 W. Va. 231; *Potts* v. *Union Traction Co.*, 75 W. Va. 212; *Crockett* v. *Black Wolf C. & C. Co.*, 75 W. Va. 325, and other related cases.

It is further insisted that even though the plaintiff was authorized to bring a suit by the district court, he cannot maintain this suit in the circuit court of Randolph county, inasmuch as he is a foreign receiver, and is without right outside of the jurisdiction of his appointment. I do not know that it can be said that a receiver appointed by a Federal district court in the State of West Virginia is a foreign receiver. While these courts are created by a distinct sovereignty, and do not exist by virtue of any law of the State of West Virginia, in the exercise of their powers they act within the confines of the state. They administer the laws of the state in the settlement of controversies within their jurisdiction. In the trial of cases in those courts juries are drawn from the citizens of the state, the judges are residents of the state, and it is apparent that there is quite a difference between these courts and the courts of another state, or even a Federal district court sitting in another state. But assuming that the Federal District Court of the Northern District of West Virginia is a foreign court, I perceive no reason why its receiver should not be allowed to institute and prosecute a suit in the courts of this state to vindicate rights belonging to the estate committed to his charge. Under

the rule of comity it is quite generally held that such receivers may institute and prosecute such suits in the courts of other states. High on Receivers, §241; *Swing* v. *Furniture Co.,* 45 W. Va. 283; *Swing* v. *Veneer Co.,* 45 W. Va. 288.

It is next insisted that before the plaintiff should be allowed to prosecute a suit against the court's special commissioner and his surety on his bond, leave of the court appointing such special commissioner must first be had and obtained; and that, it not appearing in this case that the circuit court of Randolph county ever granted such leave, the suit should be dismissed. It is a sufficient answer to this contention to say that the circuit court of Randolph county itself entertained this suit; that in an equity suit brought by this plaintiff it directed and required its special commissioner to refund to the plaintiff this money now sought to be recovered; and not only did it entertain this suit for the purpose of allowing plaintiff recovery from the special commissioner and the surety in his bond the amount of money which the court had theretofore required him to pay to the plaintiff, but neither the special commissioner, nor the court appointing him, is raising any objection to the prosecution of the suit, the objection coming only from the surety in the bond. It may be said as a general rule that where a court takes jurisdiction of a suit brought against one of its officers, and proceeds to judgment in that suit without objection from such court, it thereby impliedly gives its permission to the prosecution of the suit. 34 Cyc. 422. As before stated, the circuit court of Randolph county has entered a decree directing and requiring its special commissioner to repay this money to the plaintiff in this suit, and the entry of such a decree by that court in effect grants to the plaintiff the right to sue the special receiver, upon his failure to make such payment.

It is also contended that, inasmuch as the whole proceeding was void in which Wamsley was appointed special commissioner, and in which the sale of the timber was made and the money collected, the bond executed by the defendant was likewise void, and no recovery can be had in this case on that bond. We cannot give assent to such a proposition as this. The bond itself recites that Wamsley is a special com-

missioner of the circuit court of Randolph county in a certain cause, and by executing that bond this defendant estopped itself from saying that such was not the case. It is bound by the conditions of the bond to the same extent as if the court appointing the special commissioner had full and complete jurisdiction. Brandt on Suretyship & Guaranty, §§52, 619 & 816; *Baltimore Building & Loan Association* v. *Alderson*, 99 Fed. 489; *Town of Point Pleasant* v. *Greenlee*, 63 W. Va. 207; *Talbott* v. *Curtis*, 65 W. Va. 132. This estoppel extends not only to the specific recitations in the bond itself, but it operates to deny to the surety in the bond the right to question the jurisdiction of the court. *Beardsley* v. *Ashdown*, 73 W. Va. 132; *Baltimore Building & Loan Association* v. *Alderson*, 99 Fed. 489; Brandt on Suretyship & Guaranty, §52.

But it is said that the condition of the bond in this case is simply that Wamsley will faithfully perform his duties as special commissioner, and that the defendant in this case, being his surety, is entitled to have this condition strictly construed. This involves the question, what were his duties as special commissioner? He was an agent or an arm of the court appointing him; his appointment was for a particular purpose; and this purpose, in so far as this purchase money bond was concerned, was to collect the same with its interest, and disburse the fund under the orders of the court. He performed that part of his duty requiring him to collect, but he failed utterly to perform the duty of disbursement which, it may be said, is a very much more important duty than that of collection. At least it is the duty, from the non-performance of which, the liability of a surety in a bond like this ordinarily arises. The condition in this bond must be read in the light of the law in existence at the time it was given, and §2 of ch. 132 of the Code provides that: "Any person receiving money under any order or decree shall pay the same as the court may order, and if he fail so to do he and his sureties in his official bond shall be liable therefor." This provision was and is as much a part of the conditions of this bond as if it had been written therein. *State* v. *Wotring*, 56 W. Va. 394; *Chambers* v. *Cline*, 60 W. Va. 588;

*State* v. *McGuire,* 46 W. Va. 328. We conclude that the condition in this bond that Wamsley, as special commissioner, should perform his duties, covered fully the payment of any money which came into his hands by virtue of that appointment, in accordance with the order of the court appointing him, and any failure on his part in that regard is just as much a violation of his duty as failure to perform any other thing required of him as such special commissioner. Can it be said that the surety in an official bond is only liable for the default of the principal to the extent that the duties to be performed by the principal are particularly pointed out and specified? If that were true the bond given in this case would be absolutely worthless and would impose no obligation upon the surety whatever, for the reason that the duties of the special commissioner are not prescribed, but the bond is simply conditioned for the faithful performance of his duties in general terms. We must now, as the surety did then, look to the law to see what those duties were. Doing this we find that his duties included among other things payment of money which came into his hands by virtue of his office, in accordance with the orders of the court. This being so, the obligation of the surety fully covers his default in that regard.

It is further claimed by the defendant that to the sale made by Wamsley of the timber, the rule of *caveat emptor* applied in its fullest sense. That the rule of *caveat emptor* applies to purchasers at judicial sales cannot be doubted. Nor is it any more open to question that when a court that is without jurisdiction makes a sale and has the purchase money in its possession, it will, upon its jurisdiction being denied and overthrown, return that purchase money to the purchaser. It will not undertake to give him good title to the property; it will not undertake to have a proceeding prosecuted in a court which does have jurisdiction for the purpose of establishing his title, or for the purpose of getting in the title; but it will, to the extent that it is able, repair the mischief that has been done by its exercise of jurisdiction which it did not possess, and this extends to paying back at least so much of the purchase money as still remains in

the hands of its special commissioner. This doctrine is fully supported by the authorities. *Beardsley* v. *Ashdown,* 73 W. Va. 132; *Charleston L. & M. Co.* v. *Brockmeyer,* 23 W. Va. 635; *Baltimore Building & Loan Association* v. *Alderson,* 99 Fed. 489; Freeman on Void Judicial Sales, §49.

It is contended further that the Statute of Limitations of five years applies in this case. The argument made for the application of this statute is that the decrees under which the sale was made were void, and that the receipt and retention of the money by the special commissioner would perhaps make him liable in an action for money had and received for the use of the plaintiff, but not otherwise. If this contention were tenable, there would be no necessity for the defendent here to apply any statute of limitations, for there would be no liability upon it. But this suit is brought upon the bond, and the theory upon which it proceeds is that, while the court did not have jurisdiction of the proceeding in which its special commissioner was appointed, the defendant is estopped to deny that fact, and the court has authority and right to decree restoration of the funds collected by it.

Another objection to the judgment of the lower court is that the plaintiff Shull was allowed to testify that he had paid $884.00 for the firm of which he was a member to Special Commissioner Wamsley, and that no part of it had ever been repaid, this testimony being given after the death of Wamsley. Whether this testimony was competent under the rule denying the right of interested parties to testify against one deceased, we need not inquire. It suffices to say in this case that the obligation of the special commissioner and the surety on his bond is established beyond question, regardless of this parol evidence. The voucher was introduced in evidence from which it appears that it was paid to Wamsley for the purpose of discharging this obligation for the purchase of the timber. It shows on its face that it was paid at the bank, and it bears Wamsley's endorsement; and further, the bond itself is produced marked "paid." This was sufficient, we think, to justify the court in concluding that Wamsley had received this money, and it then devolved upon Wamsley or his surety, if they would be relieved of

liability, to show that he had disbursed the money in the manner directed. The court's judgment was not for the whole amount collected on this bond, but it allowed a credit of $132.08. This, defendant says, was proven by incompetent evidence. It may be that the evidence showing that the defendant was entitled to this credit was incompetent, but it can hardly be heard to say that because incompetent evidence which inured to its benefit was introduced, the judgment should be reversed. It may be that the court in this case should have rendered judgment against the surety for the full amount of $884.00 with its interest. However, the plaintiff is not complaining of this action of the court, and the defendant will not be allowed to complain of something which does not hurt it.

The action of the court in allowing interest on the fund is also called into question. In this case the court allowed interest on the balance not paid out by Wamsley from the date of the decree entered by this court directing a restoration of the status quo. It is contended by the defendant that no interest should have been charged against Wamsley. It must be borne in mind that Wamsley was directed to pay out this fund long before that time to the creditors who were entitled to receive it, assuming that the court below had jurisdiction, but that he failed in his duty in this regard. Had he complied with that order of the court, the plaintiff here would have been subrogated to the rights of those creditors against their debtors, and would have had the benefit of the interest on the fund from the time it was paid. Ordinarily it may be said that an officer will be liable for interest on funds in his hands from the time there is a duty upon him to pay them out. *Cecil* v. *Clark,* 69 W. Va. 641; High on Receivers, §804. In this case there was a duty upon Wamsley to pay out these funds at the time he collected them, or at least within a reasonable time thereafter. That was the court's decree, and it was his duty to act in accordance therewith. His failure to act in that regard caused the loss of the interest to the plaintiff here, for if he had paid out the funds to the creditors to whom he was directed to pay them, then this plaintiff, when subrogated to the rights of

these creditors against their debtors, would get the benefit of the interest from that time. The court did not, however, allow interest from that date, but allowed the interest from the date of the entry of the decree of this court directing the restoration of the status quo. Certainly the defendant cannot object because the judgment did not include interest for as long a time as it should have.

We find no error in the judgment complained of, and the same is affirmed.

*Affirmed.*