# CHARLESTOWN.

WILLIAM G. NORVELL, FOR USE, &c., *v.* HENRY S. WALKER.

September 9, 1876.

1876.
August Term.

W. and N. entered into a written agreement, which concluded with the words, "*Witness the following signatures and seals,*" and had but one *scroll* which was placed opposite the name of W. as a seal. N's name was signed immediately under W's name. The declaration described the said writing as "*signed by the said defendant and said plaintiff, and sealed with the seal of said defendant and the said plaintiff.*" —HELD:

On *oyer* of the agreement, and demurrer to the declaration for alleged variance between the agreement described, and the agreement itself, that there is no variance; and that the one scroll must be taken as the adopted scroll of both parties to said agreement.

*Supersedeas* to a judgment of the circuit court of Kanawha county, entered on the thirteenth day of June, 1874, in a cause therein then pending, in which the appellee, William G. Norvell was plaintiff, and the appellant, Henry S. Walker, was defendant, granted on petition of said defendant and appellant.

The facts of the case appear in the opinion of this Court.

Hon. Joseph Smith, Judge of said circuit court, presided at the trial below.

*William N. Hogeman* for plaintiff in error.

*William A Quarrier* for defendant in error.

MOORE, JUDGE:

Henry S. Walker, as party of the first part, and Wm.

G. Norvell, as party of the second part, entered into a written agreement, which concluded as follows : " *Witness the following signatures and seals :*"

HENRY S. WALKER, [Seal.]
W. G. NORVELL."

The special count in the declaration describes the written agreement as "signed by the said defendant and said plaintiff, *and sealed with the seal of said defendant and the said plaintiff.*"

The defendant, Walker, craved *oyer* of the writing in the declaration mentioned, and the said writing being read, he demurred to the declaration and each count thereof, which demurrer the Court overruled. The defendant then filed two special pleas, to which the plaintiff replied generally, and issue being joined, and neither party desiring a jury, the issues were submitted to the court in lieu of a jury, and the evidence having been heard, the court found for the plaintiff, and gave judgment for $501.65, with legal interest from the thirteenth June, 1874, until paid, and costs, including an attorney's fee of $15.00.

The defendant filed two bills of exceptions to the rulings of the court, and obtained a *supersedeas* to the judgment.

The first question presented for our consideration is : Was the *scroll* appended to the name of Henry S. Walker, as a seal, to be considered the seal of Wm. G. Norvell also ? If not, then there was a material variance between the allegation of the contract in the special count, and the contract of which *oyer* was had, and the demurrer should have been sustained.

In the case of *Bohannons v. Lewis*, 3 T. B. Monroe, 376, the plaintiff declared against the defendants, in covenant, on a writing in the following words :

"For value received, I promise to pay John Lewis, fifty pounds worth of horses, to be valued by William White and Harman Nash, at their value as trading for

land, to be paid on or before the first day of November, one thousand eight hundred and eleven.

Witness my hand and seal, this thirty-first day of October, 1809.

(Signed,)  GEORGE BOHANNON, [Seal.]
JULIUS BOHANNON."

The declaration alleged; "The said defendants by their certain covenant in writing, signed with their proper names, and *sealed* with the seal of the defendant, George, and which is now to the Court here shown," &c. The defendants craved *oyer* and demurred, and the court sustained the demurrer. The plaintiff amended his declaration, by striking out the words, *"seal of the defendant, George,"* and inserting in lieu thereof, *"seal of the defendants."* The defendants retaining their *oyer*, again demurred to the declaration, which was overruled. Judge Mills in delivering the opinion of the court affirming the judgment, held, that: "When an instrument with one seal, and two or more signers, is alleged to be sealed by all, the court on demurrer, is not authorized to infer from there being but one seal, and two or more signers, that but one, in fact, sealed the instrument; and the party who contends that it is not his seal, must reach the fact by way of plea, controverting the allegation; and as one seal may be the seal of many signers, the court from the bare inspection of the paper and declaration, cannot decide that it is the seal of one only."

In the case of *Bowman v. Robb*, 6 Barr. 302, an action of debt on two notes, each in the following figures and words:

"$75.00.                    MUNCY, May 4, 1833.

One year after date, we promise to pay to the order of John Robb, or assigns, seventy-five dollars, without defalcation, for value received. Witness our hands and seals, with lawful interest.

ORRIN FORSYTH,

————————  { L. S. }

JOSHUA BOWMAN."

Bowman plead *non est factum*, and other pleas.

The notes were on printed forms.

·It appears from the statement of the court in its charge to the jury : "both names are opposite the circular flourish, one above and the other below the horizontal line drawn there as the place of signature; but Forsyth's name is farther above that line than Bowman's is below it, and besides, it appears that there was no room for two seals. The letters, L. S. printed on the paper, and the flourish around them, occupy all the space that was left for the seal."

Upon a writ of error, the supreme court of Pennsylvania held, "there was intrinsic evidence that Bowman had adopted the seal as it stood upon the paper."

The statute code, chapter 13, section 15, last clause, enacts, "When the seal of a natural person is required to a paper, he may affix thereto, a scroll by way of seal, *or adopt as his seal any scroll, written, printed, or engraved, made thereon by another.*"

In the case before us, we must have regard to the reasonable presumptions arising out of the transaction. Is it probable that Walker intended a specialty, and Norvell a simple contract, when they united in this written instrument? If so, why did Norvell subscribe his name to it, with this *testimonium sigilla*, "witness the following signatures and seals?" There is nothing to show to this Court by whom, or how the scroll was placed to the writing. But it is there ; and the reasonable presumption is, that both Walker and Norvell availed themselves of the statutory provision, and adopted the scroll, respectively, as their seal. And as the plaintiff, Norvell, by the pleadings, admits it as his seal, and the defendant, Walker, does not deny it as his own seal, we must, therefore, hold that as there is not only intrinsic evidence of its being their seal, respectively, but also, as by the pleadings their intention in that respect is made the more manifest, the court is not authorized, on demurrer, to infer from there being but one scroll, and two signers, that

it is the seal of one and not both. The demurrer was properly overruled.

The second alleged error is substantially that of the first; and for the foregoing reasons, we must decide that the *allegata* and *probata* sufficiently correspond, and the contract was therefore admissible in evidence.

The third question for our consideration is: Was the finding and judgment of the court warranted by the evidence?

As stated in argument, by appellee, "the issues in the case are made solely upon the two special pleas. The first plea is, that on the "fifth day of March, 1872, Ruth A. Norvell, wife of plaintiff, for a valuable consideration, in writing, signed by her, assumed and agreed to pay to plaintiff the several accounts, promises, and undertakings sued on, and in plaintiff's declaration alleged; and that plaintiff, then and there, assented thereto, and agreed to look to the said Ruth A. Norvell for payment of said accounts, promises, and undertakings, and each of them and to release this defendant from further liability there-, for." The second plea alleges, that " on March 5th, 1872, the plaintiff, for a valuable consideration, agreed to, and did discharge the defendant from the payment of the several promises and undertaking, in plaintiff's declaration alleged."

On the trial of the cause, the plaintiff, to maintain the issues on his part, read in evidence, as appears from bill of exceptions number two, the contract sued on, in the words and figures following, to-wit:

"CHARLESTON, W. VA., July 21, 1871.
This agreement, made and entered into this the day and year above written, between Henry S. Walker, of the first part, and W. G. Norvell, of the second, witnesseth:

That the said party of the first part hereby agrees to furnish the capital and fixtures necessary for the estab-

lishment of a book and stationery store in the city of Charleston, West Virginia, and a suitable store room in which the same may be located and conducted ; the said capital not to be less than three thousand dollars ($3,000), and the term of this contract to be for two years, subject to renewal by the consent of the parties.

The said party of the second part agrees to take charge of the purchase of the stock needed for said store, and of the management and supervision of .the same, and is in addition, to properly keep the books of the West Virginia Courier Book, Job, and Newspaper Printing Office. For his services he is to receive the sum of twelve hundred dollars per year, payable weekly, and one-third of the profits of the book and stationery store, after deducting all the expenses of running the same, including rent of room, fuel, lights, necessary clerk hire, and other incidental expenses, but is in no event to share any losses that may occur in the proper and faithful management of said book and stationery business. Said one-third of the profits to be paid to said Norvell as in the judgment of the parties to this contract the same may be paid without detriment to the business. The right, title, and ownership of said stationery establishment to remain vested in said party of the first part, and the business to be conducted in the name of the Charleston Book Store, and all contracts, purchases, and sales to be made in that name, and signed "W. G. Norvell, Superintendent.

The said party of the second part agrees to enter upon the business specified in this agreement on the twentieth day of August, 1871, his salary to date from that day.

Witness the following signatures and seals :

HENRY S. WALKER. [Seal.]
W. G. NORVELL."

And also proved, that plaintiff was in charge of Charleston Book Store from the time the same was opened, until March 6, 1872. Whereupon the defendant read in evidence a contract between the. defendant

and Ruth A. Norvell, in the words and figures follow-ing, to-wit:

"An agreement made and entered into this fifth day of March, in the year 1872, between Henry S. Walker, of the first part, and Ruth A. Norvell, the wife of W. G. Norvell, a married woman who owns a separate estate, of the second part, witnesseth:

That in consideration of the sum of forty-four hundred dollars, which is evidenced by four negotiable notes of the said Ruth, each for the sum of $1,100, payable respectively in six, twelve, eighteen, and twenty-four months, with eight per cent. interest thereon from date, the said Henry S. Walker doth grant and sell to the said Ruth A. Norvell all the stock in trade, including books, pamphlets, pictures, writing paper, wall paper, and all other stock of whatsoever kind or description belonging to the Charleston Book Store, an establishment heretofore kept upon the ground floor of the Courier building on Capital street, in the town — Charleston. And the said Walker also grants unto the said Ruth all notes, accounts, and other debts due and owing to the said Charleston Book Store. And the said Ruth binds herself to pay all debts due and owing by the said Charleston Book Store. And the said Walker hereby leases to the said Ruth, the said store room now occupied by the said Charleston Book Store, as aforesaid, for the period of one year, at the annual rent of six hundred dollars, to be paid in monthly installments on the fifth day of each calendar month. And the said Ruth has the privilege of leasing and occupying said store room for the additional period of four years, provided she gives notice of her said intention at least thirty days before fifth March, 1873, at the annual rent aforesaid, payable as aforesaid.

Witness the following signatures and seals:

HENRY S. WALKER. [Seal.]
RUTH A. NORVELL. [Seal.]

The signatures to which, and the fact that Ruth A.

Norvell is the wife of the plaintiff, were admitted. Defendant then proved by himself that the services sued for were rendered by Norvell, for the Charleston Book Store; that W. G. Norvell was the person with whom defendant negotiated the terms of the contract aforesaid, between defendant and Ruth A. Norvell; that defendant had no conversation about the same with Ruth A. Norvell; that it was understood and agreed between plaintiff and defendant that all debts and accounts growing out of the management and conduct of the Charleston Book Store were to be paid by Mrs. Ruth A. Norvell; that no demand was ever made on defendant for the claim sued for until this suit was brought; that the defendant paid an account against himself in favor of the Charleston Book Store, which he contracted whilst he owned the said store; that this account was paid on demand of plaintiff. The defendant also proved that he was sole owner of the Charleston Book Store during the time the services sued for were rendered, and that plaintiff assented to the contract between defendant and Ruth A. Norvell. That in the negotiations with the plaintiff which led to the said contract, Mrs. Norvell's name was not used; that the first the defendant ever heard of her, in connection with such contract, was after the terms of the contract were agreed to. Both Mr. Norvell and defendant assented to the clause about debts, claims, &c. The defendant also proved by the witness, Henry S. Walker, that plaintiff agreed that defendant was to be released from every dollar of claims growing out of the Charleston Book Store; that there was at one time, pending the negotiations, a difference of opinion about some claims, which defendant insisted were as much a debt of the store as any other. Plaintiff afterwards conceded that they were to pay them. That plaintiff was clerk on a steamboat, receiving a salary, when contract between him and defendant was entered into; that he left the steamboat to engage in the defendant's employ, where he continued until March 6, 1872, carrying on the

store during that time; that plaintiff purchased store, and, according to defendant's claim, assumed to pay all claims arising out of the store; that plaintiff did not keep books of Courier Job Printing Office, because it was found that on account of business he could not keep the books. Mr. Gentry did it.

The plaintiff objected to so much of the above evidence as contradicted, added to, or explained the written contract between defendant and Ruth A. Norvell, heretofore given in evidence. But as the trial was before the court and not before a jury, the court allowed said evidence to be given, subject to the exception aforesaid.

These constituted all the evidence and facts proved on said trial." Upon consideration whereof, the court found the issues for the plaintiff, and assessed his damages against the defendant at the sum of $501.65; whereupon defendant moved the court to set aside the said finding and grant a new trial. But the said motion, was overruled, and judgment entered on the finding aforesaid, to which defendant excepted.

After mature consideration of the question, this Court being equally divided in opinion, as to whether the finding and judgment of the court was warranted by the evidence, under the law the judgment of the circuit court must be affirmed, with costs and damages to the appellee against the appellant.

JUDGMENT AFFIRMED.