# CHARLESTON

TOWN OF POINT PLEASANT *v.* GREENLEE & HARDEN *et al.*

Submitted June 14, 1907.    Decided December 17, 1907.

1. JUDGEMENT—*Default—Defective Process—Collateral Attack.*
    If process in a suit is defective or irregular, but not to the extent of being substantially worthless, a judgment by default thereon will be irregular and liable to be corrected or set aside on motion, or reversed above, but not absolutely void, and hence not open to collateral attack.   (pp. 210, 213.)

2. SAME—*Recital of Due Process.*
    If the writ, inspected as part of the record to overthrow the adjudication or recital in the judgment of due process, is an absolute contradiction thereof, an irreconcilable contradiction and denial, the invalidity of the judgment may be declared collaterally; but if the contradiction may be reconciled by a construction of the writ not absolutely at variance with reason and sound policy, a construction by the recital so given cannot be assailed collaterally.   (pp. 210, 213.)

3. PROCESS—*Return Day—Misstatement—Correction.*
    A writ tested on the first day of August, and made returnable "on the first Monday in August next," is not absolutely void, since, read in the light of the law as to issuance and return of process, the error is self-correcting, and it appears that the first Monday of the month therein mentioned was intended.   (pp. 210, 213.)

4. Judgment—*Process—Collateral Attack.*

Where the record shows that such writ has been held by the court to which it was returnable to be due process, by a recital in the judgment thereon, such judgment can not be collaterally assailed. (pp. 210, 213.)

5. Intoxicating Liquors—*Liquor Bond—Surety's Liability—Judgment —Parties.*

Where the effect of the undertaking of a surety is that he shall be liable for the result of a suit against his principal, he is conclusively bound by the judgment in such suit, even though he is not a party to it, and have no notice of it. (p. 213.)

6. Estoppel—*Bonds—Conclusiveness.*

The fair and voluntary execution of a bond is conclusive, upon all who seal it, of everything admitted therein. (p. 214.)

7. Same—*Bonds—Validity—Estoppel.*

When a bond is voluntarily entered into and the principal enjoys the benefits it was intended to secure, and breach occurs, it is then too late to raise the question of its validity. The parties are estopped from availing themselves of such defense. (p. 214.)

8. Principal and Surety.

That in a bond which concludes or estops the principal operates likewise on the surety therein. (p. 214.)

9. Same—*Action—Plea.*

The plea of *nul tiel record* is a proper plea to test the existence of a judgment, in a suit on a bond with collateral conditions the breach of which assigned is the non-payment of such judgment. (p. 214.)

Error to Circuit Court, Mason County.

Action by the Town of Point Pleasant, for the use of Annie Varian, against John Greenlee and others. From a judgment for plaintiff, defendants bring error.

*Affirmed.*

Rankin Wiley and F. P. Moats, for plaintiff in error.

John L. Whitten and Somerville & Somerville, for defendant in error.

Robinson, Judge:

A judgment for $500 having been rendered by default March 24, 1905, in favor of Annie Varian against John Greenlee and John Harden, partners as Greenlee & Harden, liquor dealers at Point Pleasant, for damages caused by selling drink to her husband, under provisions of section 26,

chapter 32 of the Code, and said judgment not being paid, this action was brought on the license bond given by said liquor dealers to the town of Point Pleasant at the time the license under which such drink was sold was granted by said municipality, the breach thereof assigned being non-payment of said judgment. The bond, the one necessary to be given by such licensed dealers, dated April 22, 1904, executed by said licensees, with a surety, contains, among the other required conditions, "the further condition that they will pay all such damages and costs as may be recovered against them under any of the provisions of chapter 32 of the Code of West Virginia, as amended." To this action said dealers and their surety appeared and tendered the special pleas hereinafter mentioned, all which were rejected except that of *nul tiel record*, which was received, issue joined thereon, and, being tried by the court, was found not sustained, and there was judgment thereon accordingly; and, said defendants failing further to plead, and neither party requiring a jury, the court, proceeding to hear the evidence and ascertain the amount due, found there was owing to the plaintiff from the defendants $554.15, and judgment was rendered in pursuance of such finding. Proper exceptions were taken to the action of the court in rejecting said special pleas, and the finding and judgment that the plea of *nul tiel record* was not sustained, and these exceptions are made the basis of this writ of error.

The first and third special pleas, one by Greenlee & Harden and the other by all the defendants, were intended to attack said judgment as obtained without due process of law, in that the process in the action in which the judgment was obtained was void because it was issued and tested on August 1, 1904, which was a Monday, and made returnable "on the first Monday in August next," which defendants say was a year hence from the issuance thereof and far beyond the time permitted by statute. The second special plea, by all the defendants, was to the effect that the bond sued upon was void, because the municipality had no authority to grant the license in relation to which the bond was executed, and had no authority to take such bond. The fourth and fifth special pleas, by the surety, were to the effect that, if any cause of action accrued to the plaintiff in the former suit, upon which said judgment therein is based, it did not accrue within one.

year next preceding the commencement of this suit. The sixth special plea, by all the defendants, was that of *nul tiel record*, received and disposed of as hereinbefore stated.

In disposing of the propositions that arise as to the admissibility of the forgoing pleas rejected, we must keep in mind that this suit is on the bond, not on the judgment. It is based on a bond with collateral conditions, and the non-payment of the judgment is declared as a breach of such conditions. The consideration of the aforesaid pleas and the argument in the briefs may be reduced to the following questions: (1) Was it competent collaterally to attack said judgment? (2) If so, was the summons void and the judgment a nullity? · (3) If the judgment was valid, was it conclusive against said surety? (4) Were defendants estopped to deny the recitals in and validity of the bond? (5) Was the plea of *nul tiel record* appropriate and responsive in this action?

The first two of said questions call for consideration together. If the judgment was void, it was open to collateral attack. *Waldron* v. *Harvey*, 54 W. Va. 608. It was void, if defendants were not duly served with valid process to answer the action. *Hall* v. *Hall*, 30 W. Va. 779; 4 Minor, 3d, Ed., Part I. p. 648. The judgment being by default, the writ was a part of the record, and could be inspected for the purpose of ascertaining whether the court acquired jurisdiction of the defendants. *Nadenbush* v. *Lane*, 4 Rand. 413; *Staunton Per. B. & L. Co.* v. *Haden*, 92 Va. 205; Black on Judg., sec. 273. And notwithstanding recital in the judgment, as in this case, that there was due process upon which to base it, the writ or return thereon, could be inspected to overthrow such recital, and show the absolute want of valid process. *Settlemier* v. *Sullivan*, 97 U. S. 444.

We must therefore consider whether the process upon which said judgment · was based was absolutely void, or whether it came within the rule "that if the notice is defective or irregular, but not to the extent of being substantially worthless, a judgment by default entered thereon will be irregular and liable to be corrected or set aside on motion, or reversed above, but not absolutely void, and hence not open to collateral attack." Black on Judg., sec. 83. The defect claimed is that the process was tested on August 1, 1904, which was the first Monday of that month, and was made re-

turnable "on the first Monday in August next." It is said this made it returnable more than ninety days from its date, and therefore so violative of the statute as to be void. It can not be questioned that if it was so returnable in more than ninety days it was void. *Kyles* v. *Ford*, 2 Rand. 1; *Coda* v. *Thompson*, 39 W. Va. 67. But it must be noted that the terms so fixing the return day are, at the least, open to two constructions, and not so plainly violative of the statute in relation to return day, when read in light of that statute, as to be absolutely void. We cannot say it is void, because it can consistently be said to relate, in reasonable and practical construction, to the first Monday in August on which it was issued, and to the two days following that Monday. Being no more than of doubtful construction, can we say that it is absolutely void, when a construction that may in good sense be given it makes it valid? Does not this character of the process bring it within the rule above quoted from Mr. Black, and simply make the judgment by default liable to be corrected or set aside on motion in the court below, or reversed above, but not absolutely void, and hence not open to collateral attack? We are constrained so to view it. The process is not substantially worthless, not absolutely nor clearly void. The recital of due process is not absolutely contradicted by inspection of the writ; it depends on construction to say otherwise. The contradiction is not explicit and irreconcilable, as it must be to overthrow the recital. Black on Judg., sec. 273. The court wherein judgment was rendered on this writ having given to it a construction that makes it valid, and one not wholly inconsistent with reason and judicial precedents, and recited in the judgment that the process was valid, such determination must stand, unless successfully assailed directly. Enforcement of such principle is necessary to stability and sanctity of judicial findings. "Where it appears that there was notice, though defective, and service, though imperfect, a decision of the court to which the process was returnable that such notice and service were sufficient, will not be held void in a collateral proceeding." Black on Judg., sec. 223. The same author further says, at section 274, that "when a notice which is defective, or service of which is informal, has been adjudged sufficient, the judgment rendered thereunder will not be held void in a collateral proceeding."

We perceive the line of distinction to be that if the writ, inspected as part of the record to overthrow the adjudication or recital in the judgment of due process, is an absolute contradiction thereof, an irreconcilable contradiction and denial, the invalidity may be declared collaterally; but if the contradiction may be reconciled by a construction not absolutely at variance with reason and sound policy, a construction by the recital so given can not be assailed collaterally. The court rendering the judgment had authority in its very constitution and being to pass upon the sufficiency of this writ, as it did by the recital in the judgment, and thereby to determine its jurisdiction in the premises, and such determination, not being at direct and irreconcilable variance with the record but a judicial construction of the writ, is not assailable collaterally. Vanfleet on Col. Attack, sec. 1; *St. Lawrence Co.* v. *Holt & Mathews*, 51 W. Va., at page 371.

In support of the province of the court so to construe the terms of the writ, a judicial determination which was in its inherent power to make and only assailable directly, is the fact that we are of opinion such construction as was there given it, that of being due process, was a proper and reasonable one, and that the writ was not void. The defendants against whom that process issued, and upon whom it was regularly served, are presumed, as all men are, to know the law—that process must be returnable within ninety days, that it may be issued on a rule day and be made returnable to the same day, and that after that first Monday to which process is made returnable there are the two succeeding days in which to enter appearance. No reasonable man would suppose that the clerk of a court meant to do a void and useless act in the issuance of process. The process upon its very face told defendants that an action in a certain court was begun against them, and the process read in the light of the law told them that they were required to appear thereto at a rule day within ninety days, which could only be construed to be the rule day on which this process issued, or the two following days. To view the command of the process otherwise, would be to give credence to the merest strained technicality for the defeat of judicial proceedings, which will always be given construction to support their regularity and validity where reasonable to do so. Public policy demands such liberal con-

struction.   No law-respecting citizen believes, upon receipt
of such process as the one before us, a vain thing is meant by
it.   He construes it to mean something; so does the at-
torney to whom he takes it; so do the courts.   These de-
fendants could well understand, and reason and right so told
them, that the word "next" following the month was a mere
clerical error of the clerk, in good sense correcting itself to
the word "instant."   The least diligence, by examination at
the clerk's office, would clear any doubt, if indeed any could
exist.   This is an age of enlightened reasoning; and it would be
a reflection on our intelligent citizenship to say any of its
members would take the language of the process in question
to mean a vain and useless mission, or would in good faith
disregard its command upon such pretense.   Authority is
not necessary to sustain this view; good sense applies and is
sufficient.

But, looking at the process collaterally, as the present suit
called upon the court below and now calls upon this Court to
do, we can well adopt the authority of Vanfleet on Collateral
Attack, section 329, "that the true rule concerning process
and service, collaterally, both at law and in equity, is that if
information be given sufficient to warn defendant that a ju-
dicial proceeding is pending against him in a particular court,
and the proof of service is sufficient for the court to infer
that he has such information, the proceeding by default will
not be void."   The author says that he deduces this rule
from all the cases; and at section 347 he says:   "It being im-
possible to avoid errors, and the law having prescribed a
method of correction by motion to quash or set aside the
process, it would seem, on principle, that, where process is
sufficient to inform the person that a proceeding has been in-
stituted against him in a special judicial tribunal, that method
ought to be exclusive."

Coming then to the third question, it is clearly answered
in the affirmative by authority.   It is foreclosed by the hold-
ing of this Court in *State* v. *Nutter*, 44 W. Va. 385, and
*State* v. *Abbott*, decided at this term.   The bond sued upon
in this action plainly guaranteed the payment of the judg-
ment, since that judgment was for damages recovered under
chapter 32 of the Code.   "Where the effect of the undertak-
ing of the surety is that he shall be liable for the result of a

suit against his principal, he is conlusively bound by the judgment in such suit, even though he is not a party to it, and have no notice of it." Brandt on Suretyship and Guaranty, sec. 802.

The fourth question is answered in the affirmative by so uniform an array of authorities that it is useless to extend discussion upon it here. "There is no exception to the rule that the fair and voluntary execution of a sealed instrument is conclusive, upon all who seal it, of everything admitted in it." *Hoke* v. *Hoke*, 3 W. Va. 561; *Monteith's Case*, 15 Grat. 172; 4 Minor, 3d. Ed., Part II. p. 1121, and authorities there cited. And the defendants having enjoyed the benefits of the bond, even if founded on an illegal license to sell liquor, they are further estopped to deny its validity. In *U. S.* v. *Hodson*, 10 Wall. 395, and *Daniels* v. *Tearney*, 12 Otto 415, the Supreme Court of the United State holds: "When a bond is voluntarily entered into and the principal enjoys the benefits it was intended to secure, and breach occurs, it is then too late to raise the question of its validity. The parties are estopped from availing themselves of such defense." And that which estops the principal also estops the surety. Brandt on Suretyship and Guaranty, sec. 52.

We conclude, therefore, that all the foregoing special pleas were properly rejected. This brings us to the last question. While the proper plea to issue in a suit of this character, upon a bond with collateral conditions, is that of "conditions performed," yet we deem the special plea of *nul tiel record* applicable here, as testing merely the existence of the record and judgment averred in the declaration, as to the non-payment of which breach is therein assigned. It did no more than test the existence of such record. By it, from what we have hereinbefore said, there could be no collateral attack of the judgment. The record being produced upon trial of this plea, verity thereof was imported, and could not be questioned thus collaterally; and it was proper to find the plea of no record not sustained. The defendants had opportunity, after trial of this special plea, to plead to issue, the general plea of the conditions performed, but chose not to do so. There properly followed judgment for plaintiff herein.

There is no error, and the judgment of which plaintiffs in error complain is affirmed.

*Affirmed.*