THE MUNICIPALITY OF COWEN *ex rel.* R. N. PROUDFOOT

*v.*

ED GREATHOUSE, *et al.*

(CC 725)

Submitted September 23, 1947. Decided October 28, 1947.

588

*Wysong & Wysong,* for plaintiff.

*Hoover & Hoover,* for defendants.

HAYMOND, JUDGE:

Upon this certificate the question of the legal sufficiency of the declaration is involved. The Circuit Court of Webster County, West Virginia, in which this action was instituted, sustained the demurrer of the defendants to the declaration of the plaintiff, the Town of Cowen, a municipal corporation in that county, which sues at the relation of R. N. Proudfoot and, on joint motion of the parties, certified its ruling to this Court.

The action is to recover the stated penalty of $3,500.00 in a written instrument, alleged to be a bond, executed by the defendant Ed Greathouse, chief of police of the Town of Cowen, a municipal corporation, in Webster County, as principal, and the defendants, Ralph Cunningham and A. H. Phares, as sureties, as damages for personal injuries resulting from an assault and battery which the declaration charges the defendant Greathouse, as such police officer, while armed with a dangerous and deadly weapon, made upon the relator, Proudfoot, on October 7, 1944. The writing, dated November 10, 1943, is conditioned upon the faithful discharge by Greathouse of the duties of his office of chief of police of the Town of Cowen, and his accounting for and paying over, as required by law, all money which may come into his hands to the person entitled to receive it. It is signed by each of the three defendants and contains the statement that it is sealed with their seals. Actually, however, no seal appears after the name of any of the signers or elsewhere upon the document. Notwithstanding the absence of a seal, the writing, which was executed and filed by Greathouse as his bond when he qualified under his appointment as chief of police of the Town of Cowen, was approved by the mayor of that municipality on November 10, 1943, the day the writing is dated. From the allegations of the declaration, it is evident that Greathouse has held and performed the duties of his office of chief of police by virtue of his appointment and qualification upon the execution of the foregoing instrument from the time he was appointed to that office on November 10, 1943, until the commission of the alleged assault and battery on October 7, 1944, and subsequently until the institution of this action.

The sole ground upon which the trial court sustained the demurrer of the defendants to the declaration was that the instrument sued on, not being under seal, was not the bond of the defendants and for that reason this action could not be maintained.

The legal questions presented are: (1) Whether the paper writing, in all respects regular in form except the

absence of a seal after the signatures of the obligors, is a bond; (2) whether the defendants, by reason of the qualification and the performance by the defendant Greathouse of the duties of his office of chief of police by virtue of the execution and delivery by the defendants and the approval by the mayor of the municipality, of the foregoing instrument as an official bond, are estopped to deny its binding effect as such notwithstanding the absence of a seal; and (3) whether the written instrument, though lacking any seal, is valid and binding upon the principal and the sureties, as a common law obligation.

Appellate courts in numerous jurisdictions have held that a writing which lacks a seal may be enforced as a common law obligation or that the absence of a seal, when the form of the instrument is in all other respects regular, is not a defect which destroys its validity. 11 C. J. S., Bonds, Paragraph 16b. As a general rule, however, in the absence of a statute which dispenses with it, a seal is essential to the existence of a bond and a writing which is devoid of the seal of the parties who sign it does not possess the qualities which attach to a bond. 11 C. J. S., Bonds, Paragraph 16b.

This Court has defined a bond as "an obligation under seal." *State ex. rel. Griffith* v. *Purcell*, 31 W. Va. 44, 5 S. E. 301. The opinion in that case also states that a bond may be either single or conditional; that it is single when the obligor binds himself, his heirs, administrator or executor, to pay a fixed sum of money on a certain day; that it is conditional when he obliges himself, his heirs, administrator or executor, to pay a certain sum of money upon condition that if he does some particular act the obligation shall be void; that a common law bond, whether single or conditional, is a bond which is voluntarily executed in the absence of any statutory authority requiring it to be executed and prescribing its penalty or its condition; and that a statutory bond is a bond which is required by statute from state, county, district or municipal officers, from fiduciaries, from parties in judicial proceedings, or from officers and agents of private corporations

pursuant to authority conferred upon them by charter or by general law. In the recent Virginia case of *Covington, Virginia* v. *Woods,* 182 Va. 528, 29 S. E. 2d 406, the Supreme Court of Appeals of that State makes the statement that a bond is a written obligation under seal and that the seal is the distinguishing characteristic which imports solemnity and binding value. In *United States* v. *Linn,* 15 Pet. 290, 10 L. ed. 742, the Supreme Court of the United States held that an instrument without seal is not a bond within the Act of Congress under consideration in that case. Here the form of the condition expressed in the instrument is substantially that prescribed by statute, Section 11, Article 2, Chapter 6, Code, 1931.

At common law the distinguishing characteristic of a bond is the presence of a seal which served to import greater solemnity than that which was accorded to an ordinary written contract. No statute of this State has dispensed with the necessity of a seal with respect to a bond, and none provides that a written instrument from which a seal is missing may be given the force or the effect of a bond. Likewise no case in this jurisdiction, cited or otherwise brought to the attention of this Court, has departed from or modified the definition of a bond as stated in the *Purcell* case, or altered or rejected the general rule which recognizes the presence of a seal as an essential characteristic of a bond. A recital in a written instrument that it is sealed with the seals of the signers does not, in the absence of a seal or an equivalent mark, operate to make the writing a sealed instrument. 11 C. J. S., Bonds, Paragraph 16b; *Comley* v. *Ford,* 65 W. Va. 429, 64 S. E. 447.

Two statutes of this State deal with the subject of seals. One of these enactments, Section 6, Article 2, Chapter 2, Code, 1931, in part provides that when the seal of a natural person is required to a paper, he may affix a scroll by way of seal, or adopt as his seal any scroll made upon such paper by another. When a scroll is affixed to a written instrument and is placed opposite the signature of one of two signers and the writing concludes with the words:

"Witness the following signatures and seals" it operates as a seal for the signatures of both parties to the instrument. *Norvell* v. *Walker,* 9 W. Va. 447. See also *State* v. *Doddridge County Bank,* 116 W. Va. 683, 182 S. E. 884. The other statute, in Sections 1 and 3, Article 3, Chapter 36, Code, 1931, provides that the presence of a seal or a symbol or a word intended to have the effect of a seal, shall not be necessary to give validity to any deed, deed of trust, mortgage or other conveyance of any estate in land and that a seal or other such symbol or word affixed to any instrument conveying or agreeing to convey land or any interest in land shall not give to such instrument any additional force or effect, by way of importing a consideration or in any other manner whatsoever, either at law or in equity, than such instrument would have if it were unsealed. As a seal is entirely missing from the document here in suit, and as it does not purport to convey land or any interest in land, neither the statutes nor the cases mentioned in this paragraph apply to the facts disclosed by the declaration now under consideration.

That the presence of a seal is essential to accord to a writing the character of a sealed instrument was decided by this Court in the case of *Comley* v. *Ford,* 65 W. Va. 429, 64 S. E. 447, in 1909, before the enactment of Section 1, Article 3, Chapter 36, Code, 1931, which dispenses with the necessity of a seal, or a symbol or a word intended as a seal, on any deed, deed of trust, mortgage, or other conveyance of land or an estate in land. In that case the lessee undertook to assign his interest, which ran for a term of twelve years, in a coal mining lease to the defendant Ford. The written assignment executed by the lessee and his wife recited that the signers had affixed their seals but, in reality, it was devoid of any seal. A statute then and, as subsequently amended, still in force provides that no estate of inheritance or freehold, or for a term of more than five years, in lands, shall be conveyed, unless by deed or will. Section 1, Article 1, Chapter 36, Code, 1931. Though the form of the assignment, except the absence of a seal, was that of a deed, this Court held that it did not

operate as a deed and did not transfer the estate of the lessee in the lease to the assignee.

In view of the previously mentioned definition of a bond, the requirement of a seal prescribed by the above stated general rule, the absence of any statute in this jurisdiction dispensing with the necessity of a seal or giving the force and its effect of a bond to an unsealed instrument, and the reasoning expressed in the *Comley* case, it is manifest that the written instrument set forth in the declaration is not a bond in the strict and technical legal sense of that term. It is obvious also, that if nothing more than the execution and the delivery of that document had occurred it would be readily rejected as a bond and treated merely as an unsealed instrument. Actually that is what it is.

The conduct of the parties to the written instrument, however, did not end at the execution stage. The writing was delivered by the signers as the bond of Greathouse which it was necessary for him to give to qualify for the office of chief of police to which he had been appointed. It was accepted and approved as his official bond by the mayor. By virtue of its execution and delivery Greathouse entered upon the duties of his office. Because the writing was treated as a bond Greathouse has been permitted to carry the billy or other dangerous and deadly weapon used by him as charged in the declaration. If the unsealed written instrument can not be regarded as a binding obligation his conduct in carrying the weapon constitutes a violation of the provisions of Section 1, Article 7, Chapter 61, Code, 1931, which make it a misdemeanor for any person, without a state license, to carry about his person any revolver or other pistol, dirk, bowie knife, slingshot, razor, billy, metallic or other false knuckles, or other dangerous or deadly weapon of like kind or character, unless, by virtue of one of the exceptions set forth in Section 5 of the same article and chapter of the Code, such person be a regularly appointed police officer of a municipality, who shall have given bond in the penalty of not less than three thousand, five hundred dol-

lars, conditioned as required, and subject to the obligations imposed, by that statute. Clearly Greathouse has relied upon the protection afforded by the writing tendered by him and approved by the Mayor of Cowen as his official bond as chief of police of that town, and by virtue of his written but unsealed instrument he has qualified for that office, has been enabled to perform its duties, and has received, accepted and enjoyed the benefits and the advantages which resulted from his occupancy of that official position. This course of conduct by the principal and the sureties amounted to a representation that the written instrument was regarded by its signers as a bond and that they accorded to it the full force and effect of a writing under seal.

It is not an unreasonable inference to be drawn from the declaration that the absence of a seal from the paper writing was, at the time of its execution and delivery, due entirely to an oversight by the signers and the representatives of the town alike, and it is evident that all the parties assumed that it was a complete and binding and valid official bond and acted at all times prior to the alleged assault and battery on that assumption, and that it fully satisfied every legal requirement with respect to the qualification of the defendant Greathouse as the duly appointed and qualified chief of police of the municipality. By statute, Section 11, Article 2, Chapter 6, Code, 1931, he was required to give an official bond, and his failure so to do, by the provisions of Section 4, Article 2, Chapter 6, Code, 1931, rendered his office vacant and subjected him to a forfeit of not less than fifty dollars nor more than one thousand dollars for entering into, or discharging any of the duties pertaining to, such office before giving the bond required of him by statute. See also Code, 6-2-1 and 6-2-3, which provide for the giving of official bonds by persons appointed or elected to any office or position in this State, who are required by any statute to enter into or give bond, and fix the liability under such bonds. A bond which is given for the purpose of complying with a statutory provision, which prescribes its condition, will be read as if

made in strict compliance with the statute. That which is required to bring the bond within the terms of the statute will be added and that which is in excess of the requirement of the statute will be subtracted in order to restrict it to the terms of the statute. *Atlas Powder Company* v. *Nelson and Chase & Gilbert Co.,* 124 W. Va. 298, 20 S. E. 2d 890; *Fireproof Products Co.* v. *Logan,* 113 W. Va. 703, 169 S. E. 400; *Chambers* v. *Cline,* 60 W. Va. 588, 55 S. E. 999.

An official bond, though required by statute, may nevertheless be entered into voluntarily. The written instrument signed by the defendants is a voluntary undertaking. Though by statutory provisions it was necessary for the defendant Greathouse to give bond in order to qualify for the office to which he was appointed, his acceptance of the appointment and the execution and the delivery of the written instrument by him and his sureties, given for the purpose of complying with the requirements of the applicable statutes, were their voluntary acts. He was free to accept or decline the appointment and he and his sureties were not compelled to enter into any written obligation. Because of the benefits which accrued to and were accepted by the principal in the written instrument, by reason of the execution and the delivery of the document as their bond, the defendants are estopped to deny its validity or its operation and effect as an official bond. *Chapman* v. *Commonwealth,* 25 Gratt. (Va.) 721. In the case of *Town of Point Pleasant* v. *Greenlee,* 63 W. Va. 207, 60 S. E. 601, 129 A. M. St. Rep. 971, this Court says: " 'When a bond is voluntarily entered into and the principal enjoys the benefits it was intended to secure, and breach occurs, it is then too late to raise the question of its validity. The parties are estopped from availing themselves of such defense.' And that which estops the principal also estops the surety." See also *Chapman* v. *Commonwealth,* 25 Gratt. (Va.) 721; *Coons* v. *People,* 76 Ill. 383; *United States* v. *Hodson,* 10 Wall. 395, 19 L. ed. 937; *Daniels* v. *Tearney,* 12 Otto. 415, 26 L. ed. 187.

Though the writings involved in each of the cases cited above were sealed instruments, and the foregoing quota-

tion from the *Greenlee* case refers to a bond, the estoppel present in each case was not limited to or based alone on the doctrine of estoppel by deed which forbids a party to an instrument under seal, such as a deed or a bond, to deny the material and essential facts recited in it. See 19 Am. Jur., Estoppel, Section 321; *Potts* v. *Longest & Tessier Co.*, 86 W. Va. 157, 103 S. E. 279; *State ex rel. Shull* v. *United States Fidelity & Guaranty Co.*, 81 W. Va. 184, 94 S. E. 123; *Beardsley* v. *Ashdown*, 73 W. Va. 132, 80 S. E. 128; *Gibson* v. *Beckham*, 16 Gratt. (Va.) 321. In at least two of the cases cited in the preceding paragraph, *Town of Point Pleasant* v. *Greenlee*, 63 W. Va. 207, 60 S. E. 601, 129 A. M. St. Rep. 971, and *Chapman* v. *Commonwealth*, 25 Gratt. (Va.) 721, an estoppel in pais, also generally spoken of as an equitable estoppel available in actions at law as well as in suits in equity, 19 Am. Jur., Estoppel, Sections 33, 34 and 35, resulting from the conduct of the signers of the instrument in voluntarily executing it and in accepting the benefits which accrued from it, was recognized and applied. In the *Greenlee* case, in Point 7 of the syllabus, this Court said that when the written instrument, in that instance a bond, "is voluntarily entered into and the principal enjoys the benefits it was intended to secure, and breach occurs, it is then too late to raise the question of its validity. The parties are estopped from availing themselves of such defense." In the *Chapman* case, the Supreme Court of Appeals of Virginia, discussing the action of Scott, the principal in an official bond given by him following his appointment by a county court to the office of collector of taxes, posed and answered in the negative the question whether he who voluntarily accepted the appointment and executed the bond, or his sureties who voluntarily assumed their liability as such, could deny the validity of their obligation. The opinion mentioned an estoppel of all of them, by their act and by their bond, to deny the validity of the action of the court in making the appointment; and the holding was that, the appointment having been made, and the principal and his sureties having executed the bond, they were estopped to deny that it was valid and binding upon them.

In *Love* v. *McCoy,* 81 W. Va. 478, 94 S. E. 954, L. R. A. 1918C 833, this Court held that an action could not be maintained to recover for a breach of the conditions of a bond executed according to the requirements of a statute afterwards declared to be unconstitutional where no profit or advantage had accrued to the obligor. In discussing generally the validity of such an undertaking, however, the Court said: "It is not the policy of the law to permit escape from the legal consequences of the execution of such an instrument, if some one or more of the persons who bind themselves to perform its conditions receive and enjoy its fruits or the protection it affords, or derive some material or financial benefit from it." In *Baltimore & Ohio Railroad Co.* v. *Vanderwarker,* 19 W. Va. 265, in Point 3 of the syllabus, this Court held:

"If a party has enjoyed the benefit of a supersedeas-bond, though it was executed by his attorney at law alone, when the law required it to be executed with security, in a proceeding to enforce the debt, after the appeal had been dismissed, he is estopped from alleging, that the supersedeas-bond was invalid."

In the leading and well considered case of *Estate of Ramsay* v. *People,* 197 Ill. 572, 64 N. E. 549, 90 Am. St. Rep. 177, frequently cited in the authorities which deal with the subject of bonds, the Supreme Court of Illinois expresses the view that when a public officer gives a bond, as a result of which he is permitted to receive and he actually receives moneys, by virtue of his office, he and his sureties are estopped to deny the validity of the obligation in an action for breach of its condition.

The application of the doctrine of estoppel in pais, or by the conduct of the parties, to the facts of this case as stated in the declaration which, on demurrer, must be regarded as true, should not be understood to mean that the common law requirement, so firmly established in this jurisdiction, that a written instrument, to be a bond, must bear a seal, is abrogated in all cases in which a public officer qualifies for the office to which he is appointed or

elected and executes and delivers as his official bond an unsealed written instrument. Whether the doctrine does or does not apply depends upon the facts which may arise in each particular case, and its application, in each instance, must be conditioned upon acts and conduct of the parties and the character and the importance of the benefits and the advantages which accrue to them from or by virtue of their written obligation. It is sufficient to say that the benefits and the advantages which have been received and enjoyed by the principal in the written instrument here under consideration, and which have accrued to him from it, are such as to render the doctrine of estoppel by conduct applicable in this case.

The unsealed written instrument, here in question, is also valid as a common law obligation. In *City of Charleston* v. *Dawson,* 85 W. Va. 353, 101 S. E. 728, though denying recovery upon a statutory bond for the breach of a promise contained in it in excess of the requirements of the statute and in holding that the instrument was insufficient as a common law obligation for that purpose because such promise was without consideration, this Court said in Point 3 of the syllabus:

> "An instrument purporting to be a statutory bond, but insufficient for that purpose because of noncompliance with the requirements of the statute, may be valid as a common law obligation, if entered into voluntarily upon a valuable consideration, and not in contravention of public policy or of any statute."

When the parties, pursuant to a statute and because of it, voluntarily endeavor to give a bond of the kind and character required by it, and by virtue of the bond so given by them, one of them as principal is inducted to an office, the bond, though invalid as a statutory bond, will, if not prohibited by statute or violative of public policy, be held to be valid as a common law obligation and the principal and the sureties will be bound by its provisions. Mechem's Public Offices and Officers, Paragraph 271.

Here the unsealed instrument, as heretofore stated, was entered into voluntarily. Though it did not fully comply with the statutory requirements, because of the absence of a seal, its execution and its delivery did not contravene any principle of public policy or any statute of this State. The defendant, Greathouse, having accepted his appointment as chief of police of the municipality, was enabled to qualify for that office by reason of the execution and the delivery of the writing, and the benefits received and enjoyed by him, which resulted from his appointment and his occupancy of the office, constitute a valuable consideration for the unsealed instrument. *United States* v. *Linn,* 15 Pet. 290, 10 L. ed. 742. As the consideration is sufficient to support the promise of the principal, he and his sureties are bound by the writing. That which is a sufficient consideration for the promise of the principal will sustain the promise of the sureties. *Pritchett* v. *People,* 6 Ill. 525. The general rule, sustained by reason and authority, is that an obligation entered into as a statutory bond, which can not be upheld as such, but which possesses all the essentials of a binding contract, is valid and enforceable as a voluntary common law obligation. *Stinson* v. *Board of Supervisors of Buchanan County,* 153 Va. 362, 149 S. E. 531. One reason for the rule is that although the instrument may not conform to the requirements of the statute to satisfy which it was given, the writing is, nevertheless, a contract if it has been entered into voluntarily, is based upon a valuable consideration, and is for a purpose not contrary to law or public policy; and such a contract is valid and binding upon the parties to it the same as any other contract at common law. An additional reason for the binding effect of a contract of that nature is that the sureties, by their act in executing it, have enabled their principal to qualify as an officer and to enter upon the performance of his duties as such, and consequently they are estopped to deny their liability for his official acts. See note to the case of *Estate of Ramsay* v. *People,* 197 Ill. 572, 64 N. E. 549, in 90 Am. St. Rep. 200.

In the light of the foregoing principles, it was error to sustain the demurrer of the defendants to the declaration of the plaintiff.

The ruling of the Circuit Court of Webster· County is reversed.

*Ruling reversed.*

KENNA, JUDGE, dissenting:

I believe that it is unsound to hold, in effect, that an instrument not under seal, although not a bond, may be recovered upon as such in an *action at law*. I do not believe that in the case at bar, a consideration deemed valuable at law has passed to the signers of the paper accepted in lieu of Greathouse's bond nor that they are in any manner estopped to deny liability. I think that to hold otherwise, for all practical purposes, destroys the effect of a seal in West Virginia.

When this State was formed it adopted in that process the law of the Commonwealth of Virginia. At that time Virginia had a statute providing that failure, not want, of consideration could be shown concerning instruments under seal. As drawing that distinction see *Williamson v. Cline*, 40 W. Va. 194, 20 S. E. 917. Otherwise both Virginia and West Virginia had regarded the seal with the effect and solemnity accorded it at common law. It was not until 1921, by the adoption of what is now Code, 36-3-1, that a seal was not an absolute essential to transfer of the legal title in land, regardless of consideration or intention. Still later, upon the adoption of the Code of 1931 the Revisers, in order to require in no case more formality in the transfer of chattels than was required in the transfer of the legal title to land, added to the language of Code, 36-1-5, by providing that "No seal shall be necessary to give validity to a gift of goods or chattels by writing * * *" including, of course, cases where the donor and donee were living together. I think it absolutely necessary to consider these statutory matters in arriving at a conclusion concerning the present necessity for the use of

the seal in West Virginia. I believe also that the cases from other jurisdictions relied upon in the majority opinion do not consider the legislative history of the seal in West Virginia which gives rise to the application of the maxim *expressio unius est exclusio alterius* and, therefore, do not apply. The history of the seal in this State shows plainly that it was the purpose of our Legislature to retain its use, as illustrated by the above maxim, as at common law except where altered by statute. See 40 West Virginia Law Quarterly 330, 345.

I am in accord with the conclusion reached in the majority opinion to the effect that the instrument sued upon is not a "bond." There can be no question but that under our previous holdings this conclusion is inescapable. I do not agree, however, that under these or any other circumstances it may be treated as a "common law obligation." That term I believe was loosely used in *City of Charleston* v. *Dawson*, 85 W. Va. 353, 101 S. E. 728, and I fear that the majority opinion has enlarged that usage. I believe that the books use the term common law obligation to distinguish statutory bonds from bonds not so required but recognized at common law. The *Dawson* case discusses it in that sense. The discussion in the opinion of the Virginia case of *Stinson* v. *Board of Supervisors of Buchanan County,* 153 Va. 362, 149 S. E. 531, beginning at page 375 and authorities there cited clearly illustrate the distinction I have in mind which is not mentioned in the majority opinion. .It, of course, is to be borne in mind that the *Stinson* opinion and the cases there cited deal with instruments under seal, i. e. bonds. We are here dealing with an unsealed instrument.

The majority opinion follows the reasoning of the United States Supreme Court in the case of *United States* v. *Linn,* 15 Pet. 290, 10 L. ed. 742, decided in 1841, with three justices, including Justice Story, dissenting. The *Linn* case was certified from the Circuit Court of the United States for the State of Illinois. That action was brought for the purpose of recovering upon a paper that in all respects was a statutory bond of a Receiver of Pub-

lic Money for the Federal Government within that State, with the single exception that it was not under seal. The Supreme Court held that there could be a recovery at common law although the instrument was not a bond. The Court, however, did not speak of the paper as being a common law obligation. William Linn had been inducted into office and had received the emoluments and benefits thereof. This was held to be a consideration moving to his sureties. In my judgment this case is not germane to the case at bar, in the first place, because it does not consider the statutory history of a seal in this jurisdiction. In the second place, the opinion is peculiar in that it bases recovery upon the instrument sued on being regarded as a common law contract. What common law and of what State? There is no national common law. 11 Am. Jur. 158. As I understand it, the Federal Courts follow the common law of the State wherein the jurisdiction of the particular case lies, and use their own construction of the common law only to interpret the Constitution and statutes of the Federal Government. The Supreme Court held that the paper given by Linn was not the contract intended by the parties, i. e. a bond. Its holding that notwithstanding that fact, recovery lay at common law, in my opinion, is nebulous to say the least. Furthermore, the case of *City of Charleston* v. *Dawson,* 85 W. Va. 353, 101 S. E. 728, decided in 1920 and cited in the majority opinion, to my mind holds the exact contrary. Howard Dawson was a policeman of the City of Charleston who had been inducted into office, received the emoluments and used the equipment and weapons of that office for an unstated period. He had given a bond in the sum of $3,500.00 the condition of which included the accidental discharge of any pistol. This condition was not required by statute. Its violation was the alleged basis of recovery. This Court held that condition mere surplusage, and in dealing with the contention that the bond should be regarded as a common law obligation, including the condition in question, had this to say: "This bond is not based upon any consideration deemed valuable in law, and

hence cannot be regarded as a valid common law obligation. *Its only effect is as a statutory bond, and it is valid only to the exent that it conforms with statutory requirements."* (Italics mine). This notwithstanding the fact that Dawson's bond was under seal.

There is no question but that as between the *Linn* case and the *Dawson* case this Court is bound by the reasoning in the *Dawson* case. As I said in my dissent in the case of *Holley* v. *Purity Baking Company,* 128 W. Va. 531, 543, 37 S. E. 2d 729, since the decision in *Erie Railroad Company* v. *Tompkins,* 304 U. S. 64, 58 S. Ct. 817, 82 L. Ed. 1188, overruling the case of *Swift* v. *Tyson,* 16 Pet. 1, the decisions of the State Courts of last resort now control those of the Federal Courts in Federal cases upon questions arising within the territorial jurisdiction of the State Courts. Although the question did not directly arise in the *Dawson* case, he, nevertheless, had taken office, performed its functions and received its benefits. This Court did not consider that a consideration moving to his surety.

It is my belief that the majority opinion will have the effect, from a practical standpoint, of wiping out the use of seals in this jurisdiction. Perhaps as a matter of policy, that should be done. I believe, however, that that is a legislative question, as it has been in the past. The bond was the only instrument requiring the use of a seal before this decision. Now it is no longer necessary to the validity of a bond in contested cases. True, recovery cannot be had if an unsealed instrument is proceeded on as a bond. If it is proceeded on as a common law obligation, recovery may be had. True also, the majority opinion academically preserves the use of a seal by this language: "The application of the doctrine of estoppel in pais, or by the conduct of the parties, to the facts of this case as stated in the declaration which, upon demurrer, must be regarded as true, should not be understood to mean that the common law requirement, so firmly established in this jurisdiction, that a written instrument, to be a bond, must bear a seal, is abrogated in all cases in which a public officer qualifies for the office to which he is appointed or

elected and executes and delivers as his official bond an unsealed written instrument." The opinion then goes ahead to state, in effect, that the application of its reasoning depends upon the facts in each particular case.

To my mind it is impossible to imagine litigation affecting recovery on a bond that has not been given operative effect. If it has been given operative effect, benefits to the principal have been received because of it. Benefits received are a binding consideration, according to the majority, and sufficient to make an unsealed obligation binding upon the surety. This, from a practical standpoint, is tantamount to saying that no bond under which a controversy arises need be under seal, because a controversy cannot arise until after the instrument has become effective.

I have examined the cases cited in the majority opinion and find that all, with the single exception of the *Linn* case, involve instruments under seal. I therefore think it unnecessary to discuss them beyond calling attention to the fact that questions which arise from irregularities and defects in the body of the papers under consideration are clearly distinguishable in principle from the validity of their execution, i. e. the effect of a seal. A sealed instrument is of entirely a different nature from one not sealed. The former *is* the contract: the latter the best and controlling *evidence* of the contract.

The foregoing comments are, of course, intended to apply only to actions at law. The extent to which the instrument in question might be reformed in a chancery proceeding I have not examined with care. See *Town of Montville* v. *Haughton, et al.*, 7 Conn. 543. I do not believe that the rule *strictissimi juris* nor that which more strictly limits the obligation of an unpaid surety than that of a surety who is paid applies because here we are not considering the construction of the body of the instrument, the decision turning upon its manner of execution.

I would affirm the judgment of the Circuit Court of Webster County.