Joe GIBSON and Allied Fidelity Insurance Company, Appellants,

v.

The STATE of Oklahoma, Appellees.

No. 57201.

Supreme Court of Oklahoma.

Dec. 14, 1982.

Jack N. Shears, Shears & Shears, Ponca City, for appellants.

Keith Ward, First Asst. Dist. Atty., Stillwater, for appellee.

OPALA, Justice:

The issue presented for our decision is whether the bail bond in suit was exonerated and the surety thereon discharged by operation of law when the trial court pronounced judgment-and-sentence. We answer in the negative.

The appellants were sureties on an appearance bond. After judgment-and-sentence was pronounced, the trial court set the defendant free for a few hours to allow him to take care of some personal business. When the defendant did not return, the judge gave notice of the bond's forfeiture. The sureties' motion to set it aside—filed less than two months later—was denied.

The sureties contend the bond was exonerated and they were released from all liability the moment defendant had appeared for sentencing. The state argues that a bond—as any other contract—should be interpreted by its terms and that the sureties should be held liable unless the critical term of the undertaking is shown not to have been entered into freely and voluntarily.

The surety on any statutory bond is liable in accordance with the terms of the statute.[1] If the provisions of the applicable statute are broader than the undertaking, the former prevail over the latter.[2] If the terms of the bond are broader than those imposed by statute, excess liability may be enforced if it does not offend public policy and was voluntarily assumed.[3]

The purpose of bail is to secure the appearance of the defendant before the court until judgment-and-sentence is pronounced.[4] The surety's statutory obligation on the undertaking is discharged at this stage of the prosecution.[5] After sentencing, an appeal bond is the proper vehicle for insuring the defendant's continued compliance with court orders.[6] Absent an appeal bond, the defendant must be remanded to the custody of the proper court or its officer. A public official may not, under the color of his office, compel a surety to expand his liability beyond the requirements of the applicable statute.[7] If an appearance bond with expanded terms is involun-

---

1. A statutory bond must be construed and enforced in accordance with the terms of the statute. *Enid Concrete Pipe & Stone Co. v. Mann*, 174 Okl. 282, 50 P.2d 307 [1935]; *W.S. Dickey Clay Mfg. Co. v. New York Casualty Co. of New York*, 174 Okl. 281, 50 P.2d 325 [1935].

2. When the statute requires a bond to be given and a surety undertakes to furnish it, the obligation of the bond—which is imposed by the statute—is read into the terms of the bond. Any of its terms, which are contrary to the policy of the law are to be disregarded as surplusage. *Western Casualty & Guaranty Ins. Co. v. Board of Com'rs*, 60 Okl. 140, 159 P. 655, 659 [1916]; *Bartley v. Bartley*, 171 Kan. 465, 233 P.2d 735, 738 [1951].

3. The general rule is that a bond entered into voluntarily and for a lawful consideration is valid as a common-law contractual obligation. *State ex rel. Hedrick v. Hartford Accident & Indem. Co.*, 154 Kan. 79, 114 P.2d 812, 816 [1941]. If such bond is not repugnant to law or the policy of the law, the surety is bound according to its terms. *Day v. Walton*, 199 Tenn. 10, 281 S.W.2d 685, 691 [1955]; *Bartley v. Bartley*, supra note 2, 233 P.2d at 738.

4. 22 O.S.1981 § 1108; *Manning v. State ex rel. Williams*, 190 Okl. 65, 120 P.2d 980, 981 [1942].

5. *State v. Foster*, Okl., 561 P.2d 1359, 1361 [1977].

6. *State v. Foster*, supra note 5.

7. The supra-statutory provisions of a bond, coercively exacted by a public official without authority or warrant of law, are unenforceable. *Constable v. National Steamship Co.*, 154 U.S. 51, 78, 14 S.Ct. 1062, 1073, 38 L.Ed. 903, 916 [1894]; *United States v. Tingey*, (40 U.S.) 5 Pet. 115, 129, 8 L.Ed. 66, 72 [1831]; *State ex rel. Hedrick v. Hartford Accident & Indem. Co.*, supra note 3; *Territory v. Woodring*, 15 Okl. 203, 82 P. 572, 573–574 [1905]; *State v. Tutt*, 175 Tenn. 412, 135 S.W.2d 449, 450 [1940].

tarily exacted, the surety may raise coerced assumption as a defense in the action to enforce that bond.[8] The law does not prevent a surety from voluntarily undertaking liability that is broader than the statute requires. Unless repugnant to some public policy, the supra-statutory terms of the obligation are enforceable as a valid common-law bond.[9]

 The printed form used in the instant case imposed broader liability than is required by law. Instead of calling for termination of undertaking upon pronouncement of judgment-and-sentence, the form contained an added provision that the defendant "if convicted will appear for judgment and *render himself in execution hereof* ...." [Emphasis added]. The bond was forfeited when the defendant failed to "render himself" in execution of the sentence. In their motion to set aside the forfeiture, the sureties neither alleged that the excess [supra-statutory] liability was involuntarily assumed nor did they tender proof of a coerced assumption.[10] Attached to the motion is a copy of our decision in *State v. Foster*.[11] In *Foster*, the printed bond form provided by the court clerk contained terms which were broader than those of the applicable statute. The use of that form was made compulsory by an order of

the local court. Unlike in *Foster*, the record in this case is devoid of any proof that the posted bond was not *in fact* the product of a free and voluntary undertaking.

 Absent allegations and proof that the sureties' assumption of excess liability was coerced, the trial court was under no duty to look beyond the plain language of the undertaking.[12] Since the appearance bond did provide that the defendant would "render himself in execution of judgment" —and he did not return after being sentenced—there was no legal error in refusing to set aside the forfeiture.

Affirmed.

IRWIN, C.J., BARNES, V.C.J., and LAVENDER, SIMMS and DOOLIN, JJ., concur.

HARGRAVE, J., concurs in the result.

HODGES and WILSON, JJ., dissent.

---

8. *State v. Foster*, supra note 5.

9. *State v. Foster*, supra note 5. If the bond is conditioned more broadly than the statute requires, its supra-statutory provisions may be enforced as a valid common-law obligation. *S.W. Fla. Water Mgt. Dist. v. Miller Constr. Co.*, 355 So.2d 1258, 1259 [Fla.App.1978]; *Clatsop County v. Feldschau*, 101 Or. 369, 199 P. 953, 955 [1921]; *Puget Sound State Bank v. Gallucci*, 82 Wash. 445, 144 P. 698, 703 [1914]. A bond, to be enforceable as a common-law obligation, must have been voluntarily executed. *State v. Tutt*, supra note 3; *State ex rel. Hedrick v. Hartford Accident & Indem. Co.*, supra note 3. The general distinction between a statutory bond and a common-law bond is that the former is required by, and must conform to, a statute, while the latter is one which is voluntarily executed in the absence of any statutory directions that prescribe its penalty or condition. *Municipality of Cowen v. Greathouse*, 130 W.Va. 587, 45 S.E.2d 489, 492–494 [App.1947]; *Bartley v. Bartley*, supra note 2.

10. A coerced assumption of supra-statutory liability on a bail bond may unfold itself in various scenarios. Its occurrence could be shown when it is established that a person who has tendered a bond in strict statutory form was required to post his undertaking by another instrument that contained expanded terms. A court official, or judge, who attempts to exact from a bondsman excess liability *would, of course*, be subject to mandamus process by which the acceptance of a bond that is statutorily-restricted could be compelled.

11. *State v. Foster*, supra note 5.

12. The terms of 15 O.S.1981 § 374 provide that "[i]n interpreting the terms of a contract of suretyship, the same rules are to be observed as in the case of other contracts." Where the contract is in writing and the language is clear and unambiguous, the intent of the parties is to be determined from the words used. 15 O.S. 1981 § 154; *Van Zant v. State Insurance Fund*, 203 Okl. 421, 223 P.2d 111, 113 [1950].